UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON EXECUTIVE SEARCH ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. |
| ) | |
| FRESHFIELDS BRUCKHAUS DERINGER US LLP, ) | |
| ) | |
| Defendant. ) | |

## **COMPLAINT**

1.       This is an action pursuant to G.L. c. 93A, § 11 to recover a fee due to Plaintiff

Boston Executive Search Associates, Inc. ("ESA") for the reasonable value of the professional

services it provided to Defendant Freshfields Bruckhaus Deringer US LLP ("Freshfields").

2.       In August 2018, Mitchell Presser, Defendant Freshfields's US Head of Global

Transactions, requested Plaintiff ESA's assistance in identifying and recruiting one or more

lateral partners to strengthen the firm's mergers and acquisitions practice. In response to that

request, ESA started introducing Freshfields to a number of high-powered corporate attorneys

for its consideration.

3.       In November 2018, Plaintiff ESA began the process of recruiting Attorney Ethan

Klingsberg, a partner at Cleary Gottlieb Steen & Hamilton LLP. Klingsberg has an exceptionally

successful corporate law practice which generates millions of dollars in billings each year. In a

conversation with Klingsberg, Plaintiff ESA learned that he was open to moving his practice to

Defendant Freshfields.

4.       The day after establishing Attorney Klingsberg's interest in Freshfields, Plaintiff

ESA had a breakfast meeting with Presser in Cambridge, Massachusetts. Plaintiff ESA disclosed

to Presser that it had contacted Attorney Klingsberg, that Klingsberg had responded positively,

and that Plaintiff ESA had begun the process of recruiting him as a prospective lateral partner for

Defendant Freshfields's consideration.

5.      Presser told Plaintiff ESA that he considered Attorney Klingsberg to be an

outstanding lateral partner candidate and that Defendant Freshfields would likely be willing to

offer Klingsberg an attractive compensation package to join the firm. Given the favorable

reaction from Presser, and Attorney Klingsberg's receptivity to being recruited, Plaintiff ESA

started to strategize its next steps.

6.      Later that day, Presser sent Plaintiff ESA an e-mail in which he instructed

Plaintiff ESA to "hold off" on further efforts to recruit Klingsberg. Presser provided no

explanation for Defendant Freshfields's abrupt change of mind. Nevertheless, Plaintiff ESA

complied with the instruction and thereafter focused on other candidates for Defendant

Freshfields's consideration.

7.      It now appears that Defendant Freshfields decided to "hijack" Plaintiff ESA's

introduction of Attorney Klingsberg to unfairly deprive Plaintiff ESA of its fee. Unbeknownst to

Plaintiff ESA, even though Defendant Freshfields told ESA it was no longer interested in

Attorney Klingsberg, Freshfields continued to pursue Klingsberg.

8.      In October 2019, Defendant Freshfields announced that it had hired Klingsberg

along with three other corporate lawyers from Cleary Gottlieb. Defendant Freshfields stands to

reap millions of dollars in profit from the enormous legal fees it will receive each year from the

billings of Attorney Klingsberg and the other members of his team.

9.      In addition to a claim for violation of Chapter 93A, the Complaint includes claims

for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum

meruit, and unjust enrichment.

## JURISDICTION AND VENUE

10.     The Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a) since the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

11.     Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(a)(2), since a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

12.     Plaintiff Boston Executive Search Associates, Inc. is a Massachusetts corporation and has a principal place of business at 1776 Massachusetts Ave, Cambridge, Massachusetts 02140. Plaintiff ESA is a legal recruiting firm that specializes in lateral partner recruiting and placements into top-tier regional, national, and international law firms.

13.     Defendant Freshfields Bruckhaus Deringer US LLP is a New York limited liability partnership whose principal place of business is located at 601 Lexington Avenue, New York, New York 10022. It is the US affiliate of an international law firm based in the United Kingdom which employs over 2800 attorneys in 29 offices worldwide. The firm is reported to be among the most profitable large law firms in the world on a per-partner basis. In the year ended April 30, 2019, the firm reported gross revenues of more than $1.8 billion with net profits of $2.35 million per partner.

## THE FACTS

**A.**     **The Services Provided By A Legal Recruiter**

14.     The services provided by partner level legal recruiters are well-known. A partner level legal recruiter identifies, recruits, qualifies, introduces, and assists in the hiring of prospective lateral candidates by law firms where their experience, skills, and expertise will be

3

highly valued. Even large law firms lack the internal research resources, professional networks, and evaluative skills to properly recruit lateral partners for themselves.

15.     Most importantly, legal recruiters serve as confidential market intermediaries for law firms concerned with their reputations. The assistance of a partner level legal recruiter allows a law firm both the freedom to recruit from its competitors without doing so directly and the ability to choose among candidates that would not be available through internal or passive sourcing methodologies.

16.     In order to be successful, a partner level legal recruiter must thoroughly understand the complex process of a successful lateral transaction from the perspective of the hiring firm and from the vantage point of the lateral partner. The recruiter must be familiar with the macro and micro trends of numerous legal markets and specialties to identify how a particular candidate will be compatible with a specific law firm. The recruiter must have a large knowledge base of law firms and attorneys and must be able to identify and attract those who are open to moving their practices. He or she must be able to grasp the culture of a law firm, including its business goals, client base, productivity, management structure, compensation system, billable hour expectations, reputation, productivity, and values. Likewise, the recruiter must know the candidate's level of sophistication of practice, client base, work habits, business savvy, likelihood he or she will consider a lateral move, and career goals. The recruiter must be able to see why the potential match is advantageous with potential value to both parties and be able to articulate it convincingly.

17.     The value provided to a law firm by a skillful and experienced partner level legal recruiter, like ESA, is immense. A high-quality lateral partner typically will add to the depth and breadth of service offerings, boost the law firm's annual profits, strengthen and grow its client

base, and reinforce its culture.

18.     The standard fee charged by legal recruiters for successfully introducing a lateral partner into a law firm is twenty-five percent (25%) of the attorney's projected first-year compensation.

**B.**     **Freshfields Retains The Services Of ESA**

19.     In July 2018, Justin Morimoto, a recruiter and consultant at Boston-based Plaintiff ESA, received a telephone call from Mitchell Presser, Esq.

20.     Presser is the US Head of Global Transactions for Defendant Freshfields. At the time of the call to Justin Morimoto, Presser was already familiar with the placement services provided by Plaintiff ESA. In the previous year, Presser had met with ESA's consultants in Massachusetts on a number of occasions to discuss the legal market generally and the options for moving his own legal practice. In one of those meetings in late 2017, Presser told Plaintiff ESA that he intended to have ESA assist Defendant Freshfields in its efforts to hire lateral partners.

21.     In July 2018, Presser and Lesley Stumphauzer, Freshfields's Legal Recruiting and Personnel Manager, called Justin Morimoto to inquire whether Plaintiff ESA would be interested in a recruitment assignment to assist Defendant Freshfields, which is primarily a European corporate law firm, build its U.S. market share. Defendant Freshfields requested that Plaintiff ESA send it some information describing its capabilities.

22.     After speaking with Presser and Stumphauzer, Justin Morimoto sent an e-mail to Presser describing Plaintiff ESA's experience in recruiting lateral partners. Presser responded to the e-mail by requesting additional information on Plaintiff ESA's recent placements.

23.     In August 2018, two ESA consultants met with Mitchell Presser, Esq., Alan Mason, Esq., Freshfields's Global Client Partner, Andrea Locklear, Freshfields's Chief

Operating Officer, and Lesley Stumphauzer, Freshfields's Legal Recruiting and Personnel

Manager, at Freshfields's Offices in New York. At the meeting, Defendant Freshfields described

the weaknesses in its US private equity and M&A practices, the steps that it was taking to

address those issues, and its flexibility and willingness to compensate impressive lateral partners

appropriately. Defendant Freshfields requested that Plaintiff ESA identify and recruit prospective

lateral partners with significant mergers and acquisitions experience.

24.     Defendant Freshfields was aware that Plaintiff ESA, like other partner level legal

recruiters, is paid a fee when it successfully introduces a lateral partner or a group of partners

who was subsequently hired by the firm. Defendant Freshfields was also aware that the industry

standard is that the legal placement firm is entitled to a fee of twenty-five percent (25%) of the

lateral partners projected total first year guaranteed compensation, excluding bonuses.

25.     On information and belief, Defendant Freshfields has retained other legal

placement firms to identify and recruit lateral partners.

**C.     Services Provided By Plaintiff ESA**

26.     After being engaged by Defendant Freshfields, Plaintiff ESA began identifying,

recruiting, qualifying, and introducing prospective lateral partner candidates to Freshfields. Over

the course of the following year, ESA discussed the opportunities at Defendant Freshfields with

more than 330 of those candidates and qualified 35 of those for consideration by Defendant

Freshfields. Defendant Freshfields agreed to meet with 13 lateral partner candidates introduced

by Plaintiff ESA and actually did meet with 7 of them.

27.     On September 12, 2018, Presser was in Boston both to meet with Plaintiff ESA

and in connection with his teaching obligations at a local law school. Presser met with Plaintiff

ESA's recruiters at a restaurant at Boston's waterfront to discuss the progress being made on the

6

assignment from Defendant Freshfields for lateral partner candidates.

28.      On September 19, 2018, Phil Morimoto sent an e-mail to Presser discussing a potential lateral partner for his consideration. Morimoto also attached to the e-mail a copy of Plaintiff ESA's standard Agreement for Recruiting Services.

**D.      Ethan A. Klingsberg, Esq.**

29.      On November 6, 2018, Justin Morimoto telephoned Ethan A. Klinsgberg, Esq., a partner at Cleary Gottlieb Steen & Hamilton LLP.

30.      Ethan A. Klingsberg, Esq. is recognized as one of the country's leading corporate lawyers. A 1989 graduate of Yale Law School, Klingsberg has been repeatedly named a "Client Service All-Star" based on the survey of general counsels of the Fortune 1000 by the BTI Consulting Group, and as "Dealmaker of the Year," "Dealmaker of the Week" and "Dealmaker in the Spotlight" by The American Lawyer.

31.      Klingsberg has extensive experience advising corporate boards, bankers, and management teams on complex, high-profile, multi billion-dollar transactions. His list of clients has included Lowe's Companies, Verizon Communications, Inc., Google owner Alphabet Inc., Goldman Sachs, Tiffany & Co., American Express, Dun & Bradstreet, Akamai Technologies, Hyundai, Agilent Technologies, Kindred Healthcare, and Samsonite, among many others.

32.      Klingsberg's background as a prolific dealmaker, his stable of blue-chip clients, and the substantial annual billings, was precisely the type of practice that Defendant Freshfields was seeking to add.

33.      Prior to November 6, 2018, Justin Morimoto and other ESA recruiters had telephoned Klingsberg on other occasions regarding assignments from other law firms. At those times, Klingsberg had either declined to speak with them or stated that he was not interested in

moving his practice from Cleary Gottlieb.

34.     In their November 6, 2018 conversation, Justin Morimoto told Klingsberg that Defendant Freshfields was seeking to significantly expand its US mergers and acquisitions practice. Justin Morimoto noted that he was meeting with Mitchell Presser, Defendant Freshfields's US Head of Global Transactions the next day. He asked Klingsberg whether he would be open to a further conversation regarding Freshfields. Klingsberg responded positively and told Justin Morimoto that he had attended law school with Presser, whom he liked/respected. Klingsberg suggested to Justin Morimoto that they keep in touch.

35.     Based on this conversation, Plaintiff ESA considered Klingsberg to be an exceptional candidate for Defendant Freshfields's consideration.

**E.     Defendant Freshfields "Hijacks" Plaintiff ESA's Efforts**

36.     The following morning, November 7, 2018, Justin Morimoto and Phil Morimoto met with Presser at a restaurant in Cambridge, Massachusetts, to report on the progress of Plaintiff ESA's search for one or more prospective lateral partners for Freshfields.

37.     During the meeting, Justin Morimoto told Presser that he had spoken with Ethan Klingsberg the previous evening and that Plaintiff ESA had begun the process of recruiting him as a prospective lateral partner for Defendant Freshfields's consideration.

38.     Justin Morimoto disclosed that his conversation with Klingsberg was positive and indicated that Klingsberg likely would be willing to meet with Presser and others from Defendant Freshfields to discuss the possibility of moving his practice. Justin Morimoto also told Presser that Klingsberg had reacted positively when Justin Morimoto told Klingsberg that he was meeting with Presser the next day.

39.     At the meeting, Presser expressed great interest in recruiting Klingsberg. Presser

told Plaintiff ESA that he considered Attorney Klingsberg to be an outstanding lateral partner

candidate. Presser also related that he believed that Defendant Freshfields would likely be

willing to offer Klingsberg a more attractive compensation package than he was probably being

paid by Cleary Gottlieb.

40.     At the conclusion of the meeting with Presser, Plaintiff ESA was encouraged by

the positive indications from both Klingsberg and Presser and began to strategize the next steps.

41.     Later that afternoon, Presser sent an e-mail to Justin Morimoto's ESA e-mail

account. In the e-mail, Presser told Plaintiff ESA to "hold off" further efforts regarding Ethan

Klingsberg, indicating that Defendant Freshfields was not interested in his candidacy.

42.     Despite instructing Plaintiff ESA to "hold off" on its recruitment efforts regarding

Klingsberg, it now appears that Defendant Freshfields continued those efforts on its own or

through another recruitment firm.

43.     On October 25, 2019, Defendant Freshfields announced that it had hired as

partners in its New York office Ethan Klingsberg and three other outstanding lawyers from

Cleary Gottlieb, corporate lawyers Pamela Marcogliese and Paul Tiger, and litigator Meredith

Kotler.

44.     The acquisition of this exceptional team of talented lawyers and their lucrative

legal practice is extremely advantageous for the Defendant Freshfields whose reputation will be

significantly enhanced. Plaintiff ESA believes that the firm will receive millions of dollars in

profits from the work that Klingsberg and other members of his team undertake for the clients

who follow them from Cleary Gottlieb. One media report has described it as "a potentially

practice-shaping move for Freshfields."

9

**F.**     **Freshfields Refuses To Pay A Fee To ESA**

45.     After learning that Freshfields had hired Klingsberg and the other Cleary Gottlieb

attorneys, Plaintiff ESA contacted Defendant Freshfields.

46.     On November 1, 2019, Phil Morimoto, Plaintiff ESA's President, spoke by

telephone with Presser and Timothy Harkness, one of Defendant Freshfields's litigation partners.

47.     In that conversation, Presser asserted that he had no recollection of discussing

Klingsberg with Plaintiff ESA on November 7, 2018. Defendant Freshfields contended that

Plaintiff ESA had no role in the introduction or placement of Attorney Klingsberg and is not

owed any compensation.

48.     Presser asserted that he had possession of an e-mail which demonstrated that

another unnamed recruiter had notified Defendant Freshfields of Attorney Klingsberg's

availability as a potential candidate prior to November 7, 2018. Presser refused Morimoto's

request for a copy of the e-mail, and also refused to provide a redacted copy of the email.

49.     Despite having received the very substantial benefits of the services provided by

Plaintiff ESA, Defendant Freshfields has refused to pay for the fair and reasonable value of those

services.

**FIRST CLAIM FOR RELIEF**
**(VIOLATIONS OF G.L. c. 93A)**

50.     Plaintiff ESA restates and realleges herein all of the allegations contained in the

preceding paragraphs as if fully set forth herein.

51.     Defendant Freshfields is engaged in trade or commerce within the meaning of

G.L. c. 93A.

52.     At Defendant Freshfields's request, Plaintiff ESA was engaged to identify candidates for consideration by Defendant Freshfields as potential lateral partner hires. Pursuant to that request, Plaintiff ESA contacted a number of potential candidates including, among others, Ethan Klingsberg, Esq.

53.     On November 7, 2018, Plaintiff ESA disclosed to Defendant Freshfields that it spoken with Ethan Klingsberg and that he had indicated a willingness to further discussions with Defendant Freshfields.

54.     Prior to November 7, 2018, Defendant Freshfields had not received any notification from any person of Attorney Klingsberg's availability as a potential candidate.

55.     After Plaintiff ESA disclosed Klingsberg's receptivity to consider moving his very successful legal practice, Defendant Freshfields instructed Plaintiff ESA to discontinue any further efforts to recruit Klingsberg. Notwithstanding its instruction to Plaintiff ESA, Defendant Freshfields continued to recruit Klingsberg on its own or through another recruitment firm.

56.     Defendant Freshfields instructed Plaintiff ESA to discontinue any further efforts to recruit Klingsberg to unfairly deprive Plaintiff ESA of its fee.

57.     By the acts and conduct described above, Defendant Freshfields has engaged in unfair or deceptive acts or practices prohibited by G.L. c. 93A, §§ 2 and 11. The actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the Commonwealth.

58.     Defendant Freshfields's acts and conduct in violation of G.L. c. 93A have been intentional and willful.

59.     By reason of the foregoing, Plaintiff ESA has suffered damages, including but not limited to attorney's fees and costs, caused by Defendant Freshfields.

## SECOND CLAIM FOR RELIEF
## <u>(QUANTUM MERUIT)</u>

60.     Plaintiff ESA restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

61.     Plaintiff ESA performed work, labor and services that it provided to Defendant Freshfields at the Defendant's request and in good faith.

62.     Plaintiff ESA had a reasonable expectation of being paid the fair value of its services.

63.     Defendant Freshfields accepted the services provided by Plaintiff ESA and reasonably believed, or should have believed, that Plaintiff ESA had an expectation to be paid the fair value for those services.

64.     The reasonable and fair value of the services performed by Plaintiff ESA and provided to Defendant Freshfields is twenty-five percent (25%) of Attorney Klingsberg's first-year compensation, which is reported to be $10 million, and twenty-five percent (25%) of the first-year compensation for each member of his team that was also hired from Cleary Gottlieb.

65.     Despite having received the very substantial benefits of the services provided by the Plaintiff, Defendant Freshfields has refused to pay for the fair and reasonable value of those services.

66.     By reason of the forgoing, Plaintiff ESA has been damaged in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
## <u>(UNJUST ENRICHMENT)</u>

67.     Plaintiff ESA restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

68.     By introducing Attorney Klingsberg to Defendant Freshfields, Plaintiff ESA conferred a measurable benefit upon the Defendant, which will be able to utilize Attorney Klingsberg's services and client base, as well as the services and client base of the other members of his team that was also hired from Cleary Gottlieb, to increase substantially its profits and to expand its business.

69.     Plaintiff ESA and Defendant Freshfields both intended that Plaintiff ESA be compensated for the benefits conferred.

70.     Defendant Freshfields has failed and refused to compensate Plaintiff ESA for any of the benefits conferred upon it.

71.     Defendant Freshfields has retained such benefits in circumstances in which, in equity and good conscience, should be paid Plaintiff ESA, and thus has been unjustly enriched.

72.     Plaintiff ESA has been damaged by Defendant Freshfields's unjust enrichment.

73.     By reason of the forgoing, Plaintiff ESA has been damaged in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## <u>(BREACH OF CONTRACT)</u>

74.     Plaintiff ESA restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

75.     Defendant Freshfields promised and agreed that if Plaintiff ESA introduced it to a potential lateral partner candidate whom Defendant subsequently hired, Defendant would pay a fee to Plaintiff ESA for its services.

76.     In reliance on Defendant Freshfields's promises and agreements, Plaintiff ESA introduced Attorney Klingsberg to Defendant Freshfields as a potential lateral partner candidate

77.     Plaintiff ESA's reliance on Defendant Freshfields's promises and agreements was reasonable.

78.     Plaintiff ESA and Defendant Freshfields entered into a contract whereby Defendant agreed to pay Plaintiff a fee for its services in introducing lateral partner candidates who were hired by Defendant.

79.     In breach of the aforesaid contract, Defendant Freshfields has failed and refused to pay Plaintiff ESA its fee for procuring Attorney Klingsberg as a lateral partner hired by Defendant Freshfields.

80.     Plaintiff ESA has suffered substantial damage as a result of Defendant Freshfields's breach of contract and its failure to pay a fee to the Plaintiff.

81.     By reason of the forgoing, Plaintiff ESA has been damaged in an amount to be determined at trial.


**FIFTH CLAIM FOR RELIEF**
**(BREACH OF IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING)**

82.     Plaintiff ESA restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

14

83.     The parties' agreement contained an implied covenant of good faith and fair dealing between the parties.

84.     As described above, Defendant Freshfields has breached the implied covenant of good faith and fair dealing and has acted in bad faith in frustrating Plaintiff ESA's right to receive the benefit of the parties' agreement.

85.     As a result of Defendant Freshfields's breach of the implied covenant of good faith and fair dealing, Plaintiff ESA has suffered damages.

## DEMAND FOR TRIAL BY JURY

Plaintiff Boston Executive Search Associates, Inc. hereby demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff Boston Executive Search Associates, Inc. respectfully requests that this Court grant it the following relief:

1.     That judgment be entered in favor of Plaintiff Boston Executive Search Associates, Inc. on its claims for relief against Defendant Freshfields Bruckhaus Deringer US LLP;

2.     That judgment be entered in favor of Plaintiff Boston Executive Search Associates, Inc. on its claims for violation of G.L. c. 93A against Defendant Freshfields Bruckhaus Deringer US LLP for treble damages, interest, costs and attorneys' fees to which it is entitled;

3.     For the costs and disbursements of this action, together with reasonable attorneys' fees; and

4.      For such other and further relief as is just and proper.

BOSTON EXECUTIVE SEARCH ASSOCIATES, INC.

By its Attorneys.

/s/ Douglas W. Salvesen

_____

Douglas W. Salvesen (BBO# 550322)
YURKO, SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, Massachusetts 02113
(617) 723-6900

Dated:   November 19, 2019