UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON EXECUTIVE SEARCH
ASSOCIATES, INC.,

                Plaintiff,

v.

FRESHFIELDS BRUCKHAUS DERINGER
US LLP,

                Defendant.

Civil Action No. 1:19-cv-12378-RGS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FRESHFIELDS
BRUCKHAUS DERINGER US LLP'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Joseph F. Savage, Jr. (BBO # 443030)
Courtney D. Orazio (BBO # 692385)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
T:  617.570.1000
F:  617.523.1231
JSavage@goodwinlaw.com
COrazio@goodwinlaw.com

Timothy P. Harkness (*pro hac vice*)
Brayden Koslowsky (*pro hac vice forthcoming*)
FRESHFIELDS BRUCKHAUS DERINGER US
LLP
601 Lexington Avenue
New York, New York 10022
T: 212.230.4610
timothy.harkness@freshfields.com
brayden.koslowsky@freshfields.com

*Counsel for Defendant Freshfields Bruckhaus
Deringer US LLP*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................3

      A.     Freshfields's Interactions With ESA. .....................................................................3

      B.     Mr. Klingsberg's Hiring...........................................................................................4

LEGAL STANDARD...........................................................................................................6

ARGUMENT .......................................................................................................................7

I.      THE MASSACHUSETTS BUSINESS BROKER STATUTE OF FRAUDS
       APPLIES TO CLAIMS SEEKING COMPENSATION FOR "BROKER" OR
       "FINDER" SERVICES.................................................................................................7

II.     ALL CLAIMS MUST BE DISMISSED BECAUSE ESA IS A "BROKER OR
       FINDER" THAT IS SUBJECT TO, BUT FAILS TO SATISFY, THE STATUTE
       OF FRAUDS................................................................................................................10

III.    ESA'S CHAPTER 93A CLAIM ALSO FAILS BECAUSE IT DOES NOT—
       AND CANNOT POSSIBLY—PLEAD ANY "UNFAIR OR DECEPTIVE"
       CONDUCT ................................................................................................................17

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Soils, Inc. v. DRS Power Tech., Inc.*,
  386 F. Supp. 3d 107 (D. Mass. 2019) ...................................................................19

*Arthur D. Little, Inc. v. Dooyang Corp.*,
  147 F.3d 47 (1st Cir. 1998) ...................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................7, 13, 18, 19

*Atkinson v. Rosenthal*,
  33 Mass. App. Ct. 219 (1992) ...............................................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................7, 16

*Bolen v. Paragon Plastics, Inc.*,
  747 F. Supp. 103 (D. Mass. 1990) ........................................................................15

*Cantell v. Hill Holliday Connors Cosmopulos, Inc.*,
  55 Mass. App. Ct. 550 (2002) ......................................................................... *passim*

*Corp. Dev. Assocs., Inc. v. Staples, Inc.*,
  2013 WL 597488 (Mass. Super. 2013) .......................................................9, 15, 17

*FranCounsel Grp., LLC v. Dessange Int'l SA*,
  980 F. Supp. 2d 1 (D. Mass. 2013) ...........................................................8, 12, 15

*GMO Tr. ex rel. GMO Emerging Country Debt Fund v. ICAP*,
  2012 WL 5197545 (D. Mass. 2012) .................................................................17, 19

*Hammond v. Kmart Corp.*,
  733 F.3d 360 (1st Cir. 2013) ...................................................................................3

*Husk, LLC v. Coca-Cola Refreshments USA, Inc.*,
  2013 WL 55815 (D. Mass. 2013) ..........................................................................19

*Incase Inc. v. Timex Corp.*,
  488 F.3d 46 (1st Cir. 2007) ...................................................................................15

*Keene Lumber Co. v. Leventhal*,
  165 F.2d 815 (1st Cir. 1948) ...................................................................................7

*Michael A. Mentuck & Assocs., Inc. v. Lloyds Underwriting Syndicate*,
    2013 WL 783050 (D. Mass. 2013) ................................................................ *passim*

*Pappas Indus. Parks v. Psarros*,
    24 Mass. App. Ct. 596 (1987) ........................................................................14

*Spectrum Sales, Inc. v. Cobham Def. Elec. Sys., Inc.*,
    2014 WL 1758109 (Mass. Super. 2014) ........................................................14

*United States v. AVX Corp.*,
    962 F.2d 108 (1st Cir. 1992) .......................................................................7, 14

*Von Papen v. Rubman*,
    18 F. Supp. 3d 77 (D. Mass. 2014) .......................................................13, 14, 15

*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*,
    2015 WL 4467064 (D. Mass. 2015) ............................................................ *passim*

*Zenon v. Guzman*,
    924 F.3d 611 (1st Cir. 2019) .................................................................1, 7, 10

**Statutes**

M.G.L. c. 259, § 7 .......................................................................................... *passim*

M.G.L. c. 93A ................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 6

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Freshfields Bruckhaus Deringer US LLP ("Freshfields") submits this Memorandum in support of its Motion to Dismiss, with prejudice, the Amended Complaint ("AC") filed by Plaintiff Boston Executive Search Associates, Inc. ("ESA").

## PRELIMINARY STATEMENT

By way of five equally baseless claims, legal recruiting firm ESA demands a multi-million dollar pay-day, based on an "agreement" with Freshfields that did not exist, for a purported lateral partner "introduction" that it never made.

ESA's claims all fail as a matter of black letter Massachusetts law.  Specifically, because ESA does not allege that it had a signed, written contract with Freshfields—nor could it, as no such thing existed—its claims are barred by the Massachusetts Business Broker Statute of Frauds.  That Statute precludes all claims by recruiting firms such as ESA arising out of "any agreement to pay compensation for service as a broker or finder," "unless such agreement is *in writing, signed by the party to be charged*."  M.G.L. c. 259, § 7.  ESA fails to meet this requirement.  In fact, the Amended Complaint makes clear that Freshfields never agreed, in any form, to any terms of any payment to ESA for any so-called "services," much less executed a written contract capable of satisfying M.G.L. c. 259, § 7.  ESA's failure to allege any agreement "in writing and signed by" Freshfields dooms each of its five claims: courts in this District routinely grant motions to dismiss where, as here, the Statute's application is "clear on the face of the plaintiff's pleadings."  *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019).  *E.g.*, *Michael A. Mentuck & Assocs., Inc. v. Lloyds Underwriting Syndicate*, 2013 WL 783050, at *3 (D. Mass. 2013) (granting motion to dismiss breach of contract, breach of implied covenant, quantum meruit, and Chapter 93A claims for "broker or finder" fees based on plaintiff's failure to plead a signed, written contract, and noting that "headhunters…qualif[y] as 'brokers' or 'finders' as defined in the Statute").

ESA's unfounded attempt to extract this payment highlights exactly why the Legislature enacted M.G.L. c. 259, § 7 in the first place: to prevent "unwarranted claims" for referral fees based on alleged oral contracts "unquestionably susceptible of misstatement and exaggeration." *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, 2015 WL 4467064, at *7 (D. Mass. 2015) (internal quotation omitted). Here, although there are no factual disputes to resolve—as ESA's allegations, accepted as true, fail to state a claim as a matter of law—the Amended Complaint is riddled with just such "misstatements" and "exaggerations." The crux of ESA's entire lawsuit is that it is owed a fee, pursuant to the parties' "agreement," for providing Freshfields with "the very substantial benefits of its services" by "introducing" to Freshfields former Cleary Gottlieb Steen & Hamilton LLP partner Ethan Klingsberg. In reality, Freshfields refused to sign ESA's proposed fee agreement for its purported "services," and never otherwise agreed to any terms of any payment to ESA to do anything. Nor did ESA make any "introduction." Freshfields itself identified Mr. Klingsberg—a partner's law school classmate—as a candidate, and then a different recruiting firm—that, unlike ESA, Freshfields *had* engaged—pursued and introduced him. In marked contrast, the sum total of ESA's involvement was this: a single errant phone call to Mr. Klingsberg, made without being instructed to by Freshfields, months after his recruitment had commenced, and nearly a full year before his eventual hiring. ESA did nothing else whatsoever to recruit Mr. Klingsberg, much less make the alleged "introduction" on which this lawsuit is based. Stripped of the "misstatement and exaggeration" that pervades ESA's Amended Complaint, this is what happened here.

Ultimately, however, whether ESA disputes any of this is of no consequence, nor would this Court need to address or resolve any such dispute. Even accepting every one of the facts in ESA's Amended Complaint as true, ESA does not—and cannot possibly—state any claim capable

2

of surviving dismissal, because all of them are barred as a matter of law by the Business Broker Statute of Frauds. Massachusetts law is unequivocal: ESA is a "broker" or "finder" subject to M.G.L. c. 259, § 7; it does not, and cannot, plead an agreement "in writing, signed" by Freshfields, as the Statute demands; and, as a result, all of its claims must be dismissed. ESA's Chapter 93A claim also fails for the independent reason that it is just a repackaged set of the same deficient allegations that underlie ESA's contract claims: it does not, and cannot possibly, plead anything approaching the level of "unfair or deceptive" conduct needed to support Chapter 93A liability. ESA's Amended Complaint should accordingly be dismissed, in full, with prejudice.

## BACKGROUND[1]

### A.    Freshfields's Interactions With ESA.

Headquartered in the United Kingdom, Freshfields is a 275 year-old global law firm with a storied international history that has steadily increased the scale and sophistication of its United States practice over the last decade. In 2018, seeking to continue that growth, Freshfields sought to expand its mergers and acquisitions practice in the United States. To that end, Freshfields met with various legal recruiting firms to discuss its search for potential lateral partner candidates, *see* AC ¶ 25, ultimately engaging, and executing a written contract with, a New York-based recruiting firm in early 2018.

Months later, in August 2018, legal recruiter ESA—which Freshfields had never previously engaged to do anything, *see id*. ¶¶ 19-85—spoke with Freshfields about the possibility of assisting with its partner search. *Id.* ¶ 23. Glaringly, ESA does not allege that the parties agreed during this alleged discussion, or at any time thereafter, to any terms of any engagement—much

---

[1] The factual background is drawn from the allegations set forth in the Amended Complaint (ECF No. 18), which Freshfields accepts as true solely in connection with the instant Motion to Dismiss, and for no other purpose. *See Hammond v. Kmart Corp.*, 733 F.3d 360, 361 (1st Cir. 2013).

less executed a written agreement—or that Freshfields ever, at any time, directed ESA to contact any particular candidates. *Id*. ¶¶ 1-85. Specifically, while ESA alleges that its President, Phil Morimoto, e-mailed to Freshfields partner Mitchell Presser ESA's proposed "Agreement for Recruiting Services" on September 19, 2018, *id*. ¶ 28, ESA nowhere alleges that Mr. Presser or any other Freshfields representative ever signed ESA's proposed Agreement or otherwise agreed to its terms, *id*. ¶¶ 1-85—because Freshfields did not. Also missing from the Amended Complaint's 85 paragraphs is a single fact suggesting that Freshfields signed ***any*** written agreement of any sort, at any time, to pay ESA any fee for any purported services—because, again, Freshfields did not. *See id*.[2] Nor, more generally, does ESA allege that the parties ever agreed, in ***any*** form—written or otherwise—to any term of payment to ESA for alleged recruiting services; even, most basically, the amount of such payment, how it would be calculated, or the conditions under which it would be owed. *See* AC ¶¶ 1-85.[3]

These facts are conspicuously absent from ESA's pleading because they do not exist. Freshfields never agreed, let alone in writing, to pay any fee to ESA for any purported services.

### B.     Mr. Klingsberg's Hiring.

Former Cleary attorney Mr. Klingsberg, who had attended law school with Freshfields partner Mr. Presser nearly thirty years earlier, *id*. ¶¶ 30, 34, had long been on Freshfields's radar as a potential lateral partner candidate. In August 2018, Freshfields shared Mr. Klingsberg's name with the New York-based recruiting firm that it had contractually engaged, *see id*. ¶ 25, as a potential target. At Freshfields's direction, that firm set out to recruit Mr. Klingsberg, secured his

---

[2] In actuality, and as would be borne out if this case were to proceed to discovery—which it should not—after refusing to sign ESA's proposed contract, Freshfields made a written counter-proposal, with materially different terms, that ESA never accepted.

[3] ESA alleges only that Freshfields was purportedly "aware" of a so-called "industry standard" recruiter fee, yet pleads no facts that provide any basis even for that generalized and conclusory allegation. AC ¶ 24.

permission to make a formal introduction to Freshfields, made that introduction, facilitated the discussions that led to his hiring, and was paid its contractually-prescribed fee for doing so.

On November 6, 2018, after Freshfields had already commenced its efforts to recruit Mr. Klingsberg, ESA decided—unbeknownst to Freshfields—that *it* would call Mr. Klingsberg. *Id.* ¶ 29. ESA did so even though Freshfields had not instructed it to, and even though Freshfields had not agreed to, much less signed, the fee Agreement that ESA had proposed roughly six weeks prior. *See id.* ¶¶ 1-85. During this call, Justin Morimoto allegedly told Mr. Klingsberg that he would be meeting with Freshfields partner Mr. Presser the next day, and asked if Mr. Klingsberg would be "open to a further conversation regarding Freshfields." *Id.* ¶ 34. Mr. Klingsberg, ESA alleges vaguely, "responded positively"; said that "he liked/respected" his law school classmate, Mr. Presser; and "suggested" to Mr. Morimoto that they "keep in touch." *Id.* This lone call is, notably, ESA's *only* alleged contact with Mr. Klingsberg concerning a possible opportunity at Freshfields. *See* AC ¶¶ 1-85. More notable still is ESA's description of this single conversation, which recounts some basic pleasantries but does not plead that Mr. Klingsberg ever gave ESA his permission to make any introduction. *Id.* ¶ 34.

The next morning, on November 7, 2018, ESA's Mr. Morimoto met Mr. Presser for breakfast in Cambridge, Massachusetts. *Id.* ¶ 37. There, Mr. Morimoto allegedly informed Mr. Presser that he had a "positive" conversation with Mr. Klingsberg the prior night, and that Mr. Klingsberg "likely would be willing to meet" with Freshfields to "discuss the possibility of moving his practice," *id.* ¶ 38 (never mind that ESA does not allege that Mr. Klingsberg himself actually said any of these things, *see id.* ¶¶ 36-41). Nevertheless, ESA claims it left this meeting "encouraged" by what it obscurely describes as "positive indications." *Id.* ¶ 40. In reality, though, as ESA admits, Freshfields told ESA to stand down the very day it learned about ESA's unsolicited

outreach to Mr. Klingsberg.  AC ¶ 41.  Specifically, just hours after this November 7, 2018 breakfast meeting, Mr. Presser e-mailed to ESA a four-word directive: "Hold off on Ethan." *Id.* Thus, as the Amended Complaint concedes, ESA did nothing more concerning Mr. Klingsberg's potential candidacy: it had no further conversations, facilitated no meetings, conducted no negotiations, and made no introduction.  *Id*. ¶¶ 1-85.[4]  Nearly a full year later, on October 25, 2019, Freshfields announced that it had hired Mr. Klingsberg, and three other former Cleary attorneys, as partners in its New York office. *Id*. ¶ 43.  Now, ESA drags Freshfields into this Court to defend against its attempt to coerce a multi-million dollar fee for allegedly "introducing" Mr. Klingsberg—with whom ESA spoke once, *id*. ¶ 34—and, remarkably, the other three former Cleary partners, *id*. ¶ 64—with whom ESA does not allege it *ever* communicated, AC ¶¶ 1-85. And ESA does so despite being informed by Freshfields that it was "notified . . . of [Mr.] Klingsberg's availability as a potential candidate" by a different recruiting firm, prior to ESA's one and only contact with him.  *See id*. ¶ 48.

ESA's five groundless claims,[5] and the factual foundation on which they rest, are ultimately belied by the Amended Complaint itself, which makes clear that Freshfields never agreed, at any time, in any form—let alone the signed writing that M.G.L. c. 259, § 7 demands— to compensate ESA for any purported lateral candidate "introductions."

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

---

[4] The recruiting firm that Freshfields had engaged, meanwhile, persisted in its ultimately successful efforts, in progress before this breakfast meeting, to recruit and introduce Mr. Klingsberg to Freshfields.

[5] The Amended Complaint includes the following allegations: violation of M.G.L. c. 93A (Count 1), quantum meruit (Count 2), unjust enrichment (Count 3), breach of contract (Count 4), and breach of the implied covenant of good faith and fair dealing (Count 5).  *See* ECF No. 18, ¶¶ 50-85.

*v. Iqbal*, 556 U.S. 662, 678 (2009).   A plaintiff's "obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Thus, while a court must accept a complaint's allegations as true at the motion to dismiss stage, this does not mean that "a court must (or should) accept" every allegation, "no matter how conclusory or generalized."   *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992).  "Affirmative defenses" such as the Statute of Frauds "may be raised in a motion to dismiss[,] provided that the facts establishing the defense" are, as here, "clear on the face of the plaintiff's pleadings."   *Zenon*, 924 F.3d at 616; *see Keene Lumber Co. v. Leventhal,* 165 F.2d 815, 820 (1st Cir. 1948) (Statute of Frauds affirmative defense properly raised on motion to dismiss).

## ARGUMENT

ESA does not, and cannot possibly, plead any "plausible" claim to relief, *Iqbal*, 556 U.S. at 678, because—as is "clear on the face of [the Amended Complaint]," *Zenon*, 924 F.3d at 616— its five claims are all unequivocally barred by the Business Broker Statute of Frauds.  ESA is a "broker or finder" subject to M.G.L. c. 259, § 7, but pleads no agreement that was "in writing" and "signed" by Freshfields, as the Statute demands—because no such thing existed.  Massachusetts law requires that the Amended Complaint be dismissed, in full, with prejudice.

**I.     THE MASSACHUSETTS BUSINESS BROKER STATUTE OF FRAUDS APPLIES TO CLAIMS SEEKING COMPENSATION FOR "BROKER" OR "FINDER" SERVICES.**

**A.     The Statute Applies To All Claims Seeking Payment For "Broker" Or "Finder" Services.**

The Massachusetts Business Broker Statute of Frauds provides, in relevant part:

> ***Any agreement to pay compensation for service as a broker or finder . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith***, *or by some other person authorized . . . **The provisions of this section shall apply to a contract implied in fact or in law*** to pay reasonable compensation but shall not

apply to a contract to pay compensation for professional services of an attorney-at-law or a licensed real estate broker or real estate salesman acting in their professional capacity.

M.G.L. c. 259, § 7 (emphases added).  Enacted "to discourage claims for commission based on a conversation which persons heard [] or remembered differently," *Whitman*, 2015 WL 4467064, at *7, "Massachusetts courts construe the Statute of Frauds liberally to ensure its legislative purpose is served." *Mentuck*, 2013 WL 783050, at *3; *Cantell v. Hill Holliday Connors Cosmopulos, Inc*., 55 Mass. App. Ct. 550, 552-53 (2002) ("G.L. c. 259, § 7, should be interpreted broadly to further its policy determination that agreements for compensation for certain services be in writing.").

By its plain terms, in the absence of an agreement "in writing, signed by the party to be charged," M.G.L. c. 259, § 7 bars all claims seeking payment for "broker" and "finder" services based on "*any* agreement," ***including*** any "contract implied in fact or in law."  Thus, as courts in this District have repeatedly held at the 12(b)(6) stage, a plaintiff's failure to plead a signed writing that "compl[ies] with the Statute of Frauds" mandates dismissal—"not only [of] contract claims but also any claims based on a contract implied in law, including recovery in quantum meruit" and "claim[s] for unjust enrichment."  *Whitman*, 2015 WL 4467064, at *2, *7 (granting motion to dismiss quantum meruit and Chapter 93A claims by "broker or finder" for failure to satisfy M.G.L. c. 259, § 7); *FranCounsel Grp., LLC v. Dessange Int'l SA,* 980 F. Supp. 2d 1, 5 (D. Mass. 2013) (granting motion to dismiss quantum meruit claim by "broker or finder" for failure to satisfy M.G.L. c. 259, § 7, which "expressly precludes equitable relief"); *Mentuck*, 2013 WL 783050, at *4-7 (granting motion to dismiss breach of contract, breach of implied covenant, quantum meruit, and Chapter 93A claims by "broker or finder" for failure to satisfy M.G.L. c. 259, § 7).

The Statute of Frauds "also bar[s]" Chapter 93A claims that are based on the same factual allegations—and thus, "derivative of"—contract-based claims for "broker" or "finder" fees. *Whitman*, 2015 WL 4467064, at *7; *Cantell*, 55 Mass. App. at 556 (Chapter 93A claim

"derivative" of "breach of contract and quantum meruit claims" was "properly dismissed"); *Corp. Dev. Assocs., Inc. v. Staples, Inc.*, 2013 WL 597488, at *6 (Mass. Super. 2013) (holding that "there can be no action" under Chapter 93A where the claim is "derivative" of contract-based claims).

### B.    The Statute's Definitions Of "Brokers" And "Finders".

Anyone that fits the "ordinary meaning[]" of a "broker" or a "finder" is subject to M.G.L. c. 259, § 7: "Because the terms . . . are not defined within the Statute, they are given their ordinary meanings and construed according to their common usage." *Mentuck*, 2013 WL 783050, at *3. A "broker," to that end, is an "agent who acts as an intermediary or negotiator," *id*., while a "finder" "locates, introduces, and brings parties to a transaction together." *Cantell*, 55 Mass. App. at 553-54; *Mentuck*, 2013 WL 783050, at *3 ("A 'finder' is [a]n intermediary who brings parties together for a business opportunity") (internal quotation omitted). Whereas a "broker" "participates in [] negotiations," a "finder" "merely brings two parties together to make their own contract." *Cantell*, 55 Mass. App. at 553. Even "one who merely identifies a business opportunity" or "identifies valuable information" for another is a "finder." *State Tax Auditing*, 2000 WL 782948, at *3. Where a plaintiff seeks relief for "broker" or "finder" services, the Statute applies even if those terms are not "explicitly invoke[d]" in the complaint. *Mentuck*, 2013 WL 783050, at *3.

Of particular import, courts applying Massachusetts law have explicitly held that "an employment agency, more colloquially described as a 'recruiter' or 'headhunter'"—like self-described "recruiter" ESA[6]—qualifies as a "broker" *and* a "finder" under the Statute:

> [Plaintiff recruiter's] services are susceptible of being viewed as those of either a "broker" or a "finder" within the ambit of [M.G.L. c. 259, § 7]. [Plaintiff] is a "broker" because its claim for services is predicated upon its serving as an intermediary that was willing to negotiate an employment contract between [prospective employee] and [defendant company]; [plaintiff] is a "finder" because it brought [prospective employee] and

---

[6] *See, e.g.*, AC ¶¶ 12, 17, 19, 24, 27, 33.

[defendant company] together to form an employment agreement, and identified business opportunities for [defendant company] by recommending prospective employees.

*Cantell*, 55 Mass. App. at 554.[7]  Because "recruiters" and "headhunters" are "brokers or finders" "within the ambit of [M.G.L. c. 259, § 7]," "the Statute of Frauds operates as a bar to [their] claims" where there is "no written contract signed by the party to be charged."  *Cantell*, 55 Mass. App. at 554 (dismissing breach of contract, quantum meruit, and Chapter 93A claims by "recruiter" or "headhunter" seeking fee for allegedly introducing prospective employee to employer as barred by M.G.L. c. 259, § 7 because plaintiff had "no written contract signed by the party to be charged"); *Mentuck*, 2013 WL 783050, at *4 (citing *Cantell* for premise that M.G.L. c. 259, § 7 "requires written commission agreements between prospective employers and companies acting as headhunters, which qualified as 'brokers' or 'finders' as defined in the Statute").

## II.    ALL CLAIMS MUST BE DISMISSED BECAUSE ESA IS A "BROKER OR FINDER" THAT IS SUBJECT TO, BUT FAILS TO SATISFY, THE STATUTE OF FRAUDS.

### A.    ESA Is A "Broker or Finder" Subject To The Statute Of Frauds.

Here, it is "clear on the face of the [Amended Complaint]," *Zenon*, 924 F.3d at 616, that ESA is subject to the Statute of Frauds as a "broker or finder" (in fact, as both).  Indeed, ESA describes itself, and its alleged "services," in terms that track, word-for-word, the caselaw (and dictionary) definitions of "brokers" and "finders" for purposes of M.G.L. c. 259, § 7.

To start, like the "recruiter" in *Cantell*, ESA describes itself, repeatedly, as a "legal *recruiter*," AC ¶ 17, and a "*recruiting* firm that specializes in lateral partner *recruiting* and

---

[7] "Further fortifying [its] conclusion that the Statute applies to employment agencies," the Appeals Court opined in *Cantell*, "are the [Statute's] specified exceptions" for attorneys and real estate brokers: "The fact that the Legislature specified exception[s] . . . strengthens the inference that no other exception was intended."  55 Mass. App. at 553 (citations omitted); *see Mentuck*, 2013 WL 783050, at *4 ("Where a statute contains enumerated exceptions such as these, there arises a strong "inference that no other exception was intended.").

placements." *Id.* ¶ 12; *see also id.* ¶¶ 19, 24, 27, 33 (emphases added).  Also like the "recruiter"

in *Cantell*, ESA is a "broker" because "its claim for services is predicated upon its serving as an

intermediary" that "attempts to bring [] parties to an agreement." 55 Mass. App. at 554.  ESA

alleges, to that end, that it "assists in the hiring of prospective lateral candidates," AC ¶ 14, and

that it must be able to "convincingly" articulate "why [a] potential match is advantageous with

potential value to both parties." *Id.* ¶ 16.  In describing these services, ESA explicitly alleges that

"legal recruiter[s], like [itself]" are "market ***intermediaries*** for law firms"—parroting the

dictionary definition that courts use to determine who is a "broker" subject to M.G.L. c. 259, § 7.

AC ¶¶ 15, 17 (emphasis added).[8]  ESA is also a "finder": again, like the recruiter in *Cantell*, ESA

brings parties (law firms and lawyers) "together to form an [] agreement" (regarding partnership

terms), and "identifie[s] business opportunities for [law firms] by recommending prospective

employees." 55 Mass. App. at 554; *cf.* AC ¶¶ 12, 14-18.  Ultimately, the entire point of ESA's

work as a "recruiter" that "identifies, recruits, qualifies, introduces, and assists in the hiring of

prospective lateral candidates," AC ¶ 14, is to serve as a "broker" and "finder" that "brings parties

together" for "business opportunit[ies]," *Mentuck*, 2013 WL 783050, at *3, and "identifies

valuable information" for those parties. *State Tax Auditing*, 2000 WL 782948, at *3.[9]

The Amended Complaint also confirms, unsurprisingly, that ESA's claims here arise out

of an alleged "agreement to pay compensation" for its alleged services as a "broker or finder."

---

[8] *E.g.*, *Mentuck*, 2013 WL 783050, at *3 (defining a "broker" as an "agent who acts as an ***intermediary***," and defining a "finder" as an "***intermediary*** who brings together parties for a business opportunity") (internal quotation marks omitted) (emphases added), *citing* Black's Law Dictionary 219 (9th ed. 2009).

[9] ESA touts the "valuable information" that "legal recruiter[s], like [itself]," AC ¶ 17, offer to law firms and attorneys.  Because "[e]ven large law firms lack the internal research resources, professional networks, and evaluative skills to properly recruit lateral partners for themselves," ESA alleges, *id.* ¶ 14, recruiters add "immense" value, *id.* ¶ 17, as they are "familiar" with the "trends of numerous legal markets and specialties" and thus able "to identify how a particular candidate will be compatible with a specific law firm." *Id.* ¶ 16.

M.G.L. c. 259, § 7.  ESA alleges that Freshfields "requested that [] ESA *identify* and recruit" prospective partners, AC ¶ 23; that Freshfields "agreed" and "entered into a contract" to pay ESA "a fee" if ESA "*introduced* it to a potential lateral partner candidate" it later hired, *id*. ¶¶ 75, 78; and that Freshfields has deprived ESA of the fee it is allegedly owed under this "contract," *id*. ¶ 79, for allegedly "*introduc[ing]* Mr. Klingsberg to [] Freshfields as a potential lateral candidate," *id*. ¶ 76 (emphases added).  Massachusetts law is well-settled: a plaintiff, like ESA, that demands payment based on an alleged "agreement" to perform "identification" or "introduction" services— terms ESA uses a combined 20 times to describe itself in the Amended Complaint[10]—is a "broker or finder" subject to M.G.L. c. 259, § 7, regardless of whether those terms were "explicitly invoke[d]" in the operative pleading.  *Mentuck*, 2013 WL 783050, at *3, *4 (granting motion to dismiss breach of contract, breach of implied covenant, quantum meruit, and Chapter 93A claims seeking fee for services as "either a broker or finder" based on an alleged agreement that "contemplated [him] receiving compensation for *identifying* a prospective buyer" of defendant's inventory); *see Whitman*, 2015 WL 4467064, at *7 (granting motion to dismiss unjust enrichment and Chapter 93A claims by marketing agent seeking fee as a "finder" for "*introducing* prospective investors" to defendant's advisory services and "arranging meetings" between defendant and prospective clients).[11]  As a "broker or finder," ESA must therefore satisfy the Business Broker Statute of Frauds or face dismissal.

---

[10] *E.g.*, AC ¶ 26 ("After being engaged by Defendant Freshfields, Plaintiff ESA began *identifying*, recruiting, qualifying, and *introducing* prospective lateral partner candidates") (emphases added); *see id.* ¶¶ 2, 7, 14, 16, 18, 23, 24, 52, 68, 75, 76, 78 (describing ESA's services using the terms "identify," "introduce," and variants thereof).

[11] *See FranCounsel*, 980 F. Supp. at 5 (granting motion to dismiss quantum meruit claim by plaintiff who "allegedly acted as a broker or finder by *introducing*" merging companies, in exchange for fee if "[plaintiff's] services led to the conclusion of a business partnership"); *State Tax Auditing*, 2000 WL 782948, at *3 (dismissing breach of contract, unjust enrichment, and quantum meruit claims by "finder" seeking fee for "*identify[ing]* valuable information" to aid defendant company in tax preparation); *Cantell*, 55 Mass. App. at 554 (dismissing breach of contract, quantum meruit, and Chapter 93A claims by

**B.     ESA Does Not—Because It Cannot—Plead That The Parties Had An Agreement "In Writing" And "Signed" By Freshfields, As Required To Satisfy The Statute Of Frauds.**

Because the Statute of Frauds applies to ESA as a "broker or finder," the "only question remaining is whether [ESA's] claims, as they are pleaded, set forth plausible causes of action in light of the Statute's requirements." *Mentuck*, 2013 WL 783050, at *3. To state such a "plausible cause of action," ESA must allege an agreement "*in writing*, *signed* by the party to be charged therewith"—*i.e.*, Freshfields—"or by some other person authorized." M.G.L. c. 259, § 7. To be enforceable, such writing must include "all essential terms . . . present together with the signature or mark of the party to be charged." *Von Papen v. Rubman*, 18 F. Supp. 3d 77, 85 (D. Mass. 2014). Allegations that "merely, and vaguely, allege[] the existence of 'contracts and/or agreements,'" without "explicitly aver[ring] that a written, signed agreement existed," or "identify[ing] the date it was formed or the specific terms it contained," are "insufficient." *Mentuck*, 2013 WL 783050, at *5 (granting motion to dismiss breach of contract, breach of implied covenant, quantum meruit, and Chapter 93A claims by insurance salvager seeking fee for "broker or finder" services where complaint "neither allege[d] nor incorporate[d] any written contract" capable of satisfying M.G.L. c. 259, § 7) (internal quotation marks omitted), *quoting Iqbal*, 556 U.S. at 679.

Here, there are no facts anywhere in the Amended Complaint's 85 paragraphs suggesting that the parties had *any* agreement that was "in writing" and "signed" by or on behalf of Freshfields, AC ¶¶ 1-85, as M.G.L. c. 259, § 7 requires—because no such thing existed. Nowhere does ESA allege that Freshfields ever signed or otherwise agreed to ESA's proposed fee Agreement (because Freshfields did not), or that Freshfields ever agreed to or signed any *other*

---

"recruiter" or "headhunter" seeking fee as both a "broker" and "finder" for "*introduc[ing]* parties to each other" by "recommending prospective employees") (emphases added).

written document (because, again, Freshfields did not).  *Id.* ¶¶ 1-85.  Indeed, far from alleging any

signed, written agreement to "all essential terms," as the Statute of Frauds demands, *Von Papen*,

18 F. Supp. at 85, ESA does not even allege that the parties agreed in ***any*** form, written or

otherwise, to a single term of engagement—even, most basically, the ***amount*** of any potential

fee[12]—for any alleged "services."  Again, the reason for this pleading failure is clear: Freshfields

never agreed to any term of any potential payment to ESA to do anything, let alone by way of a

signed, written contract, as required by M.G.L. c. 259, § 7.

Ultimately, as in *Cantell*, ESA's groundless demand for a "one-time finder's fee"—based

on an alleged "agreement" that never existed, for an alleged "introduction" it never made—falls

squarely "in the heartland of the Statute's intended reach": to suppress "cooked up claims of

agreement, sometimes fathered by wish, sometimes imagined in light of subsequent events, and

sometimes simply conjured up."  *Spectrum Sales, Inc. v. Cobham Def. Elec. Sys., Inc.*, 2014 WL

1758109, at *3 (Mass. Super. 2014), *quoting Pappas Indus. Parks v. Psarros*, 24 Mass. App. Ct.

596, 598 (1987).[13]

---

[12] Lacking a single agreed-on term, ESA pleads only that Freshfields was purportedly "aware" of "industry standard" recruiting fees. AC ¶ 24. But so-called "'customary' business practices do not [] substitute for a written agreement under the Statute of Frauds," *Mentuck*, 2013 WL 783050, at *6, nor does ESA plead any facts to support even this most "conclusory" and "generalized" claim.  *AVX Corp.*, 962 F.2d at 115.

[13] In applying a narrow exception to the Statute's mandate that "broker or finder" agreements be in writing, the Appeals Court in *Spectrum* made clear that ESA does ***not*** qualify for that exception, which is reserved for the rare "configuration of facts" that "greatly diminishes the risk of fraud" and creates "a risk of inequity if effect is not given" to an oral agreement. 2014 WL 1758109, at *4. In *Spectrum*—the lone case, to Freshfields's knowledge, where the exception has saved "broker or finder" claims from dismissal—the parties shared a decades-long course of dealing under a "written agreement" "in effect for 19 years," so fees claimed under an oral modification could "readily be determined" based on that written contract. *Id*. at *3.  In "stark contrast," ESA's claims here are on all fours with those in *Cantell*, which the *Spectrum* court singled out as arising in the Statute's "heartland." *Id*.  Like the recruiter in *Cantell*, ESA seeks a "one-time finder's fee" absent any "prior contract" from which any terms of any agreement could "readily be determined." *Id*.  The exception thus has no application to this factual "configuration," which exemplifies the very "abuses" the Statute is meant to prevent. *Id*.  To hold otherwise would be an unprecedented and unwarranted extension of an exception reserved for cases standing in "stark contrast" to this one.

### C.      The Statute Of Frauds Requires Dismissal Of All Claims.

#### 1.      ESA's Express and Implied Contract Claims Must Be Dismissed (Counts 2-5).

The Statute of Frauds compels dismissal of all of ESA's contractual claims, express and implied alike, for their failure to plead the existence of any agreement "in writing, signed by the party to be charged," as M.G.L. c. 259, § 7 explicitly requires:

- ***Breach of Contract (Count 4).*** M.G.L. c. 259, § 7 declares "void" "any agreement" to pay for "broker or finder" services, unless a plaintiff can prove a written agreement signed by the party to be charged.  ESA's failure to allege an agreement "in writing" and "signed" by Freshfields, as "the Statute of Frauds plainly requires…to be enforceable," thus dooms its breach of contract claim. *Mentuck*, 2013 WL 783050, at \*4-7 (granting motion to dismiss breach of contract claim where "broker or finder" failed to allege "valid contract that satisfies the Statute of Frauds").[14]

- ***Breach of Implied Covenant Of Good Faith And Fair Dealing (Count 5).*** ESA's implied covenant claim fails for the same reason: "Without a valid, enforceable contract in place, there can be no implied covenant of good faith and fair dealing."  *Corp. Dev. Assocs.*, 2013 WL 597488, at \*6 (dismissing implied covenant claim by "broker or finder" company seeking fee for allegedly "introducing" parties to merger in absence of valid written contract); *Mentuck*, 2013 WL 783050, at \*7 (granting motion to dismiss implied covenant claim where "broker or finder" failed to allege "valid contract that satisfies the Statute of Frauds").

- ***Quantum Meruit (Count 2).*** M.G.L. c. 259, § 7 bars all claims for "broker or finder" fees based on "*[a]ny* agreement," ***including*** any "contract implied in fact or in law."  Quantum meruit is a "contract implied in law"[15]; thus, recovery is barred by the Statute's "plain language."  *State Tax Auditing*, 2000 WL 782948, at \*3 (dismissing quantum meruit claim by "finder" in absence of a signed, written agreement); *FranCounsel*, 980 F. Supp. 2d at 5-6 (granting motion to dismiss quantum meruit claim by "broker or finder" seeking fee for introducing merging businesses, as Statute "expressly precludes equitable relief.").

- ***Unjust Enrichment (Count 3).*** Like quantum meruit, unjust enrichment claims are premised on "quasi-contracts" "implied in law."  *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 54 (1st Cir. 2007).  Because M.G.L. c. 259, § 7 bars relief under any "implied contract theory," it "does

---

[14] *Cantell*, 55 Mass. App. at 553 ("Statute of Frauds operate[d] as a bar" to recruiter's breach of contract claim); *Corp. Dev. Assocs.,* 2013 WL 597488, at \*6 (dismissing breach of contract claim absent valid written agreement under M.G.L. c. 259, § 7); *Von Papen*, 18 F. Supp. at 86-87 (dismissing breach of contract claim absent "enforceable agreement of [] terms sufficiently complete and definite," "much less a 'writing signed by the parties to be charged' as is necessary to satisfy the Statute of Frauds").

[15] *See Bolen v. Paragon Plastics, Inc.*, 747 F. Supp. 103, 106 (D. Mass. 1990) ("Massachusetts cases often use the terms quantum meruit, quasi-contract and implied contract without distinguishing among them"); *Cantell*, 55 Mass. App. at 554 n.6 (M.G.L. c. 259, § 7 "precludes recovery on any claim based on a contract implied in law, including recovery in quantum meruit.").

not support a claim for unjust enrichment where"—as here—"there is no written agreement for service as a broker or finder." *Whitman*, 2015 WL 4467064, at \*5 (granting motion to dismiss).

### 2.  ESA's Derivative Chapter 93A Claim Must Be Dismissed (Count 1).

Apart from adding a "formulaic recitation of the elements" in textbook conclusory pleading, *Twombly,* 550 U.S. at 555, *see* AC ¶¶ 57, 58, ESA's Chapter 93A claim is just a relabeled version of the same defective factual allegations that fail to plead viable contractual claims. Because this claim is merely "derivative" of—and thus, dependent on—those contract-based claims, their failure under M.G.L. c. 259, § 7 mandates dismissal of ESA's Chapter 93A claim too.

To elaborate: where the "gravamen of [a] Chapter 93A claim[] is that the defendant[] has refused to pay fees due" under an alleged agreement, such a claim is "derivative of [the plaintiff's] breach of contract claims and barred by the Statute of Frauds." *Whitman*, 2015 WL 4467064, at \*7 (granting motion to dismiss unjust enrichment and derivative Chapter 93A claim by marketing agent seeking fees for "introducing prospective investors" to investment firm). Here, ESA's own words make plain that the "gravamen" of its Chapter 93A theory is that Freshfields "ha[s] refused to pay fees" to which ESA claims contractual entitlement. *Id*. For instance, "pursuant to G.L. c. 93A, § 11," ESA purports to seek "a fee" for providing "professional services" to Freshfields, which allegedly "deprive[d]" ESA of that fee. AC ¶¶ 1, 56. The crux of ESA's Chapter 93A claim, therefore, is identical to the crux of ESA's contract claims, which demand damages "as a result of Freshfields's breach of contract and its failure to pay" ESA this same "fee." *Id*. ¶ 80.

Because the "gravamen" of ESA's Chapter 93A claim is ESA's alleged entitlement to contractually-owed fees, it is merely "derivative of [its] breach of contract claims," and their failure thus dooms this one too. *Whitman*, 2015 WL 4467064, at \*7; *Cantell*, 55 Mass. App. at 556 (dismissing Chapter 93A claim by "recruiter" seeking fee for introducing candidate to prospective employer as "derivative of [] breach of contract and quantum meruit claims"). Ultimately, M.G.L.

c. 259, § 7, and its application here, is clear: "There can be no action" under Chapter 93A where the claim, like ESA's—is "derivative" of claims for "breach of contract," "quantum meruit[,] and unjust enrichment." *Corp. Dev. Assocs.*, 2013 WL 597488, at *6. Like the ill-pleaded contract claims on which it rests, ESA's Chapter 93A claim must be dismissed.

## III.    ESA'S CHAPTER 93A CLAIM ALSO FAILS BECAUSE IT DOES NOT—AND CANNOT POSSIBLY—PLEAD ANY "UNFAIR OR DECEPTIVE" CONDUCT

Even if it was not barred by the Statute of Frauds—which it plainly is—ESA's Chapter 93A claim *also* fails for the related, but independent, reason that its repackaged, contract-based allegations do not plead anything approaching the level of "unfair or deceptive" conduct required to state a Chapter 93A claim capable of surviving dismissal.

Chapter 93A prohibits "unfair or deceptive" acts or practices in the conduct of any trade or commerce. M.G.L. c. 93A, § 2. While the question of "unfairness" is a factual inquiry, "the boundaries of what may qualify for consideration as a [] violation is a question of law." *Whitman*, 2015 WL 4467064, at *9. And Massachusetts law is clear that "a simple, or even intentional, breach [of contract] is insufficient in itself to constitute an 'unfair or deceptive trade practice' under Chapter 93A"—and that a 93A claim must thus be dismissed where "well-pled facts suggest nothing more than a mere breach of contract, even if . . . knowing or intentional." *Whitman*, 2015 WL 4467064, at *9 (granting motion to dismiss Chapter 93A claim that also failed on Statute of Frauds grounds). To avoid dismissal, a plaintiff must plead specific facts demonstrating conduct that is "not only wrong, but also egregiously wrong," *GMO Tr. ex rel. GMO Emerging Country Debt Fund v. ICAP*, 2012 WL 5197545, at *10 (D. Mass. 2012), vesting the breach with "an extortionate quality that gives it the rancid flavor of unfairness." *Atkinson v. Rosenthal*, 33 Mass. App. Ct. 219, 226 (1992). To that end, in "those cases where courts have found 93A violations arising out of a breach of contract," defendants have "wrestled" "additional services or advantages

17

. . . from the aggrieved party through false promises," *Whitman*, 2015 WL 4467064, at *9, or "repeatedly promis[ed] to pay" a plaintiff's fee, "stringing out the process" to "extract a favorable settlement." *Arthur D. Little, Inc. v. Dooyang Corp.,* 147 F.3d 47, 55-56 (1st Cir. 1998).

Here, ESA does not—and cannot—plead anything close to the "egregiously wrong" or "extortionate" conduct needed to state a viable Chapter 93A claim. Far from pleading, for instance, that Freshfields "wrestle[d]" any "additional services" from ESA, *Whitman*, 2015 WL 4467064, at *9, ESA explicitly pleads the opposite. By ESA's own admission, the very day Freshfields found out about ESA's undirected call to Mr. Klingsberg, it told ESA to stand down, AC ¶ 41, and ESA did nothing else to recruit him. Nor did Freshfields "string[] out the process" by "repeatedly promising" to accede to ESA's baseless demand. *Arthur D. Little*, 147 F.3d at 56-57. Again, the Amended Complaint alleges the opposite: Freshfields told ESA it would not pay a fee to which Freshfields never agreed and to which ESA was not entitled, having had "no role in the introduction or placement of [Mr.] Klingsberg," who was introduced by a different recruiter altogether. AC ¶ 47. Lacking any factual allegations that could possibly give rise to Chapter 93A liability, ESA resorts to listing the statute's elements and then making a handful of "conclusory statements" utterly "devoid of further factual enhancement." *Whitman*, 2015 WL 4467064, at *9 (internal quotations omitted); *see, e.g.*, AC ¶ 56 (alleging that Freshfields instructed ESA "to discontinue any further efforts to recruit" Mr. Klingsberg "to unfairly deprive" ESA of its fee, but pleading no facts to support the assertion that this directive was given to "unfairly deprive" ESA of anything); *id.* ¶ 57 (alleging that "Freshfields's acts and conduct in violation of G.L. c. 93A have been intentional and willful," but pleading no facts to support any such allegations of intent).

ESA's "threadbare recital" of Chapter 93A's elements—wholly unsupported by ***any*** factual allegations that support them—cannot stand. *Iqbal*, 556 U.S. at 678. Indeed, courts in this

District routinely reject just the sort of transparent attempt that ESA makes here to recycle mere breach of contract allegations and relabel them as claims for relief under Chapter 93A. *See, e.g.*, *Husk, LLC v. Coca-Cola Refreshments USA, Inc.*, 2013 WL 55815, at *1 (D. Mass. 2013) (granting motion to dismiss where "well-pleaded facts d[id] not suggest anything more than a breach of contract," as Chapter 93A requires more than "a good faith dispute as to whether money is owed") (internal quotations omitted).[16]   Ultimately, like the rest of ESA's unfounded allegations, its Chapter 93A theory amounts to yet another "unwarranted claim[]," borne of "misstatement and exaggeration," to coerce a payment that Freshfields never agreed to and that ESA did not earn. *Whitman*, 2015 WL 4467064, at *7.  This is just what the Statute of Frauds is designed to prevent. Like ESA's four contract-based claims, its Chapter 93A claim should also be dismissed for failure to state any "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

## CONCLUSION

For the foregoing reasons, ESA's Amended Complaint should be dismissed in its entirety, with prejudice.

---

[16] *E.g.*, *GMO*, 2012 WL 5197545, at *10 (granting motion to dismiss 93A claim where allegation carried "consequences no worse than the simple breach of the commercial obligation itself"); *Whitman*, 2015 WL 4467064, at *9 (granting motion to dismiss Chapter 93A claim that also failed on Statute of Frauds grounds for failure to plead "unfair or deceptive" act, as complaint "suggest[ed] nothing more than a mere breach of contract"); *ABC Soils, Inc. v. DRS Power Tech., Inc.*, 386 F. Supp. 3d 107, 111 (D. Mass. 2019) (granting motion to dismiss Chapter 93A claim where complaint stated breach of contract but failed to allege defendant's "bad faith").

Dated:  January 24, 2020

Respectfully submitted,

FRESHFIELDS BRUCKHAUS DERINGER US LLP,

By its attorneys,

*/s/ Joseph F. Savage, Jr.*
Joseph F. Savage, Jr. (BBO # 443030)
Courtney D. Orazio (BBO # 692385)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
T:  617.570.1000
F:  617.523.1231
JSavage@goodwinlaw.com
COrazio@goodwinlaw.com

Timothy P. Harkness (*pro hac vice*)
Brayden Koslowsky (*pro hac vice forthcoming*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue
New York, New York 10022
T: 212.230.4610
timothy.harkness@freshfields.com
brayden.koslowsky@freshfields.com

## CERTIFICATE OF SERVICE

I, Joseph F. Savage, Jr., hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on January 24, 2020.

*/s/ Joseph F. Savage, Jr.*