UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON EXECUTIVE SEARCH ASSOCIATES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 19-CV-12378 (RGS) |
| | ) |
| FRESHFIELDS BRUCKHAUS DERINGER US LLP, | ) |
| | ) |
| Defendant. | ) |

## SECOND AMENDED COMPLAINT

1.       This is an action pursuant to G.L. c. 93A, § 11 to recover a fee due to Plaintiff

Boston Executive Search Associates, Inc. ("ESA") for the reasonable value of the professional

services it provided to Defendant Freshfields Bruckhaus Deringer US LLP ("Freshfields").

2.       In August 2018, Mitchell Presser, Defendant Freshfields's US Head of Global

Transactions, requested Plaintiff ESA's assistance in identifying and recruiting one or more

lateral partners to strengthen the firm's mergers and acquisitions practice. In response to that

request, ESA started introducing Freshfields to a number of high-powered corporate attorneys

for its consideration.

3.       In November 2018, Plaintiff ESA began the process of recruiting Attorney Ethan

Klingsberg, a partner at Cleary Gottlieb Steen & Hamilton LLP. Klingsberg has an exceptionally

successful corporate law practice which generates millions of dollars in billings each year. In a

conversation with Klingsberg, Plaintiff ESA learned that he was open to moving his practice to

Defendant Freshfields.

4.       The day after establishing Attorney Klingsberg's interest in Freshfields, Plaintiff

ESA had a breakfast meeting with Presser in Cambridge, Massachusetts. Plaintiff ESA disclosed

to Presser that it had contacted Attorney Klingsberg, that Klingsberg had responded positively,

and that Plaintiff ESA had begun the process of recruiting him as a prospective lateral partner for Defendant Freshfields's consideration.

5.      Presser told Plaintiff ESA that he considered Attorney Klingsberg to be an outstanding lateral partner candidate and that Defendant Freshfields would likely be willing to offer Klingsberg an attractive compensation package to join the firm. Given the favorable reaction from Presser, and Attorney Klingsberg's receptivity to being recruited, Plaintiff ESA started to strategize its next steps.

6.      Later that day, Presser sent Plaintiff ESA an e-mail in which he instructed Plaintiff ESA to "hold off" on further efforts to recruit Klingsberg. Presser provided no explanation for Defendant Freshfields's abrupt change of mind. Nevertheless, Plaintiff ESA complied with the instruction and thereafter focused on other candidates for Defendant Freshfields's consideration.

7.      It now appears that Defendant Freshfields decided to "hijack" Plaintiff ESA's introduction of Attorney Klingsberg to unfairly deprive Plaintiff ESA of its fee. Unbeknownst to Plaintiff ESA, even though Defendant Freshfields told ESA it was no longer interested in Attorney Klingsberg, Freshfields continued to pursue Klingsberg.

8.      In October 2019, Defendant Freshfields announced that it had hired Klingsberg along with three other corporate lawyers from Cleary Gottlieb. Defendant Freshfields stands to reap millions of dollars in profit from the enormous legal fees it will receive each year from the billings of Attorney Klingsberg and the other members of his team.

9.      In addition to a claim for violation of Chapter 93A, the Complaint includes claims for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, and unjust enrichment.

## JURISDICTION AND VENUE

10.     The Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a) since the Plaintiff is a citizen of Massachusetts and the Defendant and each of its partners are citizens of states other than Massachusetts and the amount in controversy exceeds $75,000, exclusive of interests and costs.

11.     Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(a)(2), since a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

12.     Plaintiff Boston Executive Search Associates, Inc. is a Massachusetts corporation and has a principal place of business at 1776 Massachusetts Ave, Cambridge, Massachusetts 02140. Plaintiff ESA is a legal recruiting firm that specializes in lateral partner recruiting and placements into top-tier regional, national, and international law firms.

13.     Defendant Freshfields Bruckhaus Deringer US LLP is a New York limited liability partnership whose principal place of business is located at 601 Lexington Avenue, New York, New York 10022. It is the US affiliate of an international law firm based in the United Kingdom which employs over 2800 attorneys in 29 offices worldwide. The firm is reported to be among the most profitable large law firms in the world on a per-partner basis. In the year ended April 30, 2019, the firm reported gross revenues of more than $1.8 billion with net profits of $2.35 million per partner. None of the individual partners of Defendant Freshfields Bruckhaus Deringer US LLP, who are listed below, is a citizen of Massachusetts:

- *Suzanne Alenick* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New Jersey. She resides in Woodcliff Lake, NJ.

- *David D. Almroth* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and

a citizen of New Jersey. He resides in Jersey City, NJ.

- *Nigel Alexander Blackaby* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of Maryland. He resides in Bethesda, MD.

- *Daniel Adam Braun* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of the District of Columbia. He resides in Washington, DC.

- *Eric B. Bruce* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of the District of Columbia. He resides in Washington, DC.

- *Aly El Hamamsy* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Thomas Bryant Ensign* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of Maryland. He resides in Bethesda, MD.

- *Andrew John Ewalt* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of Maryland. He resides in Kensington, MD.

- *Sebastian Landry Fain* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Elliot E. Friedman* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Timothy Paul Harkness* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of Connecticut. He resides in Greenwich, CT.

- *Matthew F. Herman* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in Larchmont, NY.

- *Paul Kendall Humphreys* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

4

- *Valerie Ford Jacob* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. She resides in Brooklyn, NY.

- *Thomas Lucille Jöergens* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Menachem Y. Kaplan* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Howard Mitchell Klein* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in Port Washington, NY.

- *Ethan Adam Klingsberg* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in Purchase, NY.

- *Meredith Eve Kotler* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. She resides in New York, NY.

- *Mary Nell Lehner* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of the District of Columbia. She resides in Washington, DC.

- *Michael Alan Levitt* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Mark F. Liscio* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in Larchmont, NY.

- *Peter D. Lyons* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in Rye, NY.

- *Eric Johnson Mahr* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of Virginia. He resides in Great Falls, VA.

- *Pamela L. Marcogliese* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. She resides in New York, NY.

- *Aaron Robert Marcu* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in Brooklyn, NY.

- *Noiana Paula Marigo* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. She resides in New York, NY.

- *Linda H. Martin* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. She resides in New Rochelle, NY.

- *Bruce C. McCulloch* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of Virginia. He resides in Alexandria, VA.

- *Aimen Mir* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of Virginia. He resides in Vienna, VA.

- *Mitchell Steven Presser* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Madlyn Gleich Primoff* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. She resides in Scarsdale, NY.

- *Omar Pringle* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Melissa Y. Raciti-Knapp* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. She resides in Manhasset, NY.

- *Olivia Anne Radin* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. She resides in Brooklyn, NY.

- *Jerome C. Ranawake* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in Brooklyn, NY.

- *Brian D. Rance* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Caroline Suzanne Richard* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of the District of Columbia. She resides in Washington, DC.

- *Robert H. Scarborough* a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Adam Brent Siegel* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New Jersey. He resides in Summit, NY.

- *Claude Behney Stansbury* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of Virginia. He resides in Alexandria, VA.

- *Scott David Talmadge* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in Rye Brook, NY.

- *Paul Moty Tiger* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Timothy Allen Wilkins* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. He resides in New York, NY.

- *Paul Laurance Yde* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of Maryland. He resides in University Park, MD.

- *Kimberly H. Zelnick* is a partner in Defendant Freshfields Bruckhaus Deringer US LLP and a citizen of New York. She resides in New York, NY.

## THE FACTS

### A.      The Services Provided By A Legal Recruiter

14.     The services provided by partner level legal recruiters are well-known. A partner level legal recruiter identifies, recruits, qualifies, introduces, and assists in the hiring of prospective lateral candidates by law firms where their experience, skills, and expertise will be highly valued. Even large law firms lack the internal research resources, professional networks, and evaluative skills to properly recruit lateral partners for themselves.

15.     Most importantly, legal recruiters serve as confidential market intermediaries for law firms concerned with their reputations. The assistance of a partner level legal recruiter allows a law firm both the freedom to recruit from its competitors without doing so directly and the ability to choose among candidates that would not be available through internal or passive sourcing methodologies.

16.     In order to be successful, a partner level legal recruiter must thoroughly understand the complex process of a successful lateral transaction from the perspective of the hiring firm and from the vantage point of the lateral partner. The recruiter must be familiar with the macro and micro trends of numerous legal markets and specialties to identify how a particular candidate will be compatible with a specific law firm. The recruiter must have a large knowledge base of law firms and attorneys and must be able to identify and attract those who are open to moving their practices. He or she must be able to grasp the culture of a law firm, including its business goals, client base, productivity, management structure, compensation system, billable hour expectations, reputation, productivity, and values. Likewise, the recruiter must know the candidate's level of sophistication of practice, client base, work habits, business savvy, likelihood he or she will consider a lateral move, and career goals. The recruiter must be

able to see why the potential match is advantageous with potential value to both parties and be able to articulate it convincingly.

17.     The value provided to a law firm by a skillful and experienced partner level legal recruiter, like ESA, is immense. A high-quality lateral partner typically will add to the depth and breadth of service offerings, boost the law firm's annual profits, strengthen and grow its client base, and reinforce its culture.

18.     The standard fee charged by legal recruiters for successfully introducing a lateral partner into a law firm is twenty-five percent (25%) of the attorney's projected first-year compensation.

**B.      Defendant Freshfields Engages The Services Of Plaintiff ESA In August 2018**

19.     On July 31, 2018, Mitchell Presser and Lesley Stumphauzer telephoned Justin Morimoto, a recruiter and consultant at Boston-based Plaintiff ESA. Presser is the US Head of Global Transactions for Defendant Freshfields. Stumphauzer is Freshfields's Legal Recruiting and Personnel Manager.

20.     At the time of the call to Justin Morimoto, Presser was already familiar with the placement services provided by Plaintiff ESA. In the previous year, Presser had met with ESA's consultants in Massachusetts on a number of occasions to discuss the legal market generally and the options for moving his own legal practice. In one of those meetings in late 2017, Presser told Plaintiff ESA that he intended to have ESA assist Defendant Freshfields in its efforts to hire lateral partners.

21.     In the July 31 telephone call, Presser and Stumphauzer asked Morimoto whether Plaintiff ESA would be interested in a recruitment assignment. Defendant Freshfields, which is primarily a European corporate law firm, was looking for assistance in building its U.S. market

share. They asked Morimoto to send them some information describing Plaintiff ESA's capabilities.

22.     After speaking with Presser and Stumphauzer, Justin Morimoto sent an e-mail to Presser at his New York office describing Plaintiff ESA's experience in recruiting lateral partners. Presser responded to the e-mail by requesting additional information on Plaintiff ESA's recent placements, which Morimoto provided.

23.     In August 2018, Presser invited Justin Morimoto to travel to New York and meet with him at Freshfields's New York offices.

24.     In response to Presser's invitation, Justin Morimoto and Phil Morimoto, Plaintiff ESA's President, travelled to Freshfields's New York offices on August 21, 2018. There they met with Presser, Alan Mason, Freshfields's Global Client Partner, Andrea Locklear, Freshfields's Chief Operating Officer, and Stumphauzer.

25.     At the meeting, Presser and the others described Defendant Freshfields's weaknesses in its US private equity and M&A practices, the steps that it was taking to address those issues, and its flexibility and willingness to compensate impressive lateral partners appropriately.

26.     Defendant Freshfields requested to retain the services of Plaintiff ESA in identifying and recruiting prospective lateral partners with significant mergers and acquisitions experience. Plaintiff ESA agreed to provide these services to Defendant Freshfields.

27.     After being engaged by Defendant Freshfields in August 2018, Plaintiff ESA began identifying, recruiting, qualifying, and introducing prospective lateral partner candidates to Freshfields. Over the course of the following year, ESA discussed the opportunities at Defendant Freshfields with more than 330 of those candidates and qualified 35 of those for

consideration by Defendant Freshfields. Defendant Freshfields agreed to meet with 13 lateral partner candidates introduced by Plaintiff ESA and actually did meet with 7 of them.

28.     Neither at the meeting in New York nor at any time thereafter, did Defendant Freshfields ever state or otherwise indicate to Plaintiff ESA that Freshfields had engaged the services of any other legal recruiter to assist it in identifying and recruiting prospective lateral partners with significant mergers and acquisitions experience.

29.     Neither at the meeting nor at any time thereafter, did Defendant Freshfields direct Plaintiff ESA to not contact or recruit any specific attorney as a prospective lateral partner.

30.     At the meeting in New York, Defendant Freshfields understood and expected that Plaintiff ESA would not provide the requested services for free. Rather Defendant Freshfields understood and expected that Plaintiff ESA would be compensated for its services.

31.     Defendant Freshfields was aware that Plaintiff ESA, like other partner level legal recruiters, is paid a fee when it successfully introduces a lateral partner or a group of partners who was subsequently hired by the firm. Defendant Freshfields was also aware that the industry standard is that the legal placement firm is entitled to a fee of twenty-five percent (25%) of the lateral partners projected total first year guaranteed compensation, excluding bonuses.

32.     On information and belief, Defendant Freshfields had in the past worked with legal placement firms on other engagements not related to this matter and was aware of the industry standard for compensation to a legal placement firm.

**C.      Plaintiff ESA's Written Fee Agreement**

33.     After the New York meeting, Phil Morimoto sent an email on August 23, 2018 to Mitchell Presser in New York. In the email, Morimoto pointed out to Presser that Plaintiff ESA did not yet have a completed fee agreement with Defendant Freshfields. Morimoto asked Presser

to provide him with a copy of Freshfields's standard agreement for his review.

34.     Mitchell Presser replied to Phil Morimoto's email on August 23, 2018. In his reply, Presser stated that if Defendant Freshfields had a standard agreement he would send it to Morimoto, otherwise, Freshfields would agree to Plaintiff ESA's agreement.

35.     In the days and weeks thereafter, Mitchell Presser's August 23, 2018 email, he did not send any fee agreement to Plaintiff ESA. It was reasonable for Plaintiff ESA to conclude that Defendant Freshfields did not have a standard agreement that it used with legal recruiters and, instead, it had agreed to use Plaintiff ESA's agreement.

36.     On September 19, 2018, a month after requesting a copy of Defendant Freshfields's fee agreement, Phil Morimoto sent an e-mail from his Massachusetts office to Mitchell Presser in New York. Phil Morimoto attached a copy of Plaintiff ESA's Agreement for Recruiting services.

37.     Plaintiff ESA's fee agreement provided, among other terms, that if Defendant Freshfields hired a candidate introduced by ESA it would pay to ESA a fee of twenty-five percent (25%) of the candidate's projected first year compensation. In addition, the agreement provided that Plaintiff ESA would receive additional compensation if Freshfields hired a group of attorneys. These fees reflected the industry standard for compensation to a legal placement firm.

38.     Plaintiff ESA has no present knowledge whether or not Defendant Freshfields executed the standard fee agreement that Phil Morimoto sent to Mitchell Presser on September 19, 2018.

39.     After Defendant Freshfields received the agreement, it continued to accept the services provided by Plaintiff ESA and ESA continued to identify and recruit prospective lateral

partners with significant mergers and acquisitions experience.

**D.    Attorney Ethan A. Klingsberg**

40.    On November 6, 2018, Justin Morimoto telephoned Ethan A. Klinsgberg, a partner at Cleary Gottlieb Steen & Hamilton LLP.

41.    Ethan A. Klingsberg is recognized as one of the country's leading corporate lawyers. A 1989 graduate of Yale Law School, Klingsberg has been repeatedly named a "Client Service All-Star" based on the survey of general counsels of the Fortune 1000 by the BTI Consulting Group, and as "Dealmaker of the Year," "Dealmaker of the Week" and "Dealmaker in the Spotlight" by The American Lawyer.

42.    Klingsberg has extensive experience advising corporate boards, bankers, and management teams on complex, high-profile, multi billion-dollar transactions. His list of clients has included Lowe's Companies, Verizon Communications, Inc., Google owner Alphabet Inc., Goldman Sachs, Tiffany & Co., American Express, Dun & Bradstreet, Akamai Technologies, Hyundai, Agilent Technologies, Kindred Healthcare, and Samsonite, among many others.

43.    Klingsberg's background as a prolific dealmaker, his stable of blue-chip clients, and the substantial annual billings, was precisely the type of practice that Defendant Freshfields was seeking to add.

44.    Prior to November 6, 2018, Justin Morimoto and other ESA recruiters had telephoned Klingsberg on other occasions regarding assignments from other law firms. At those times, Klingsberg had either declined to speak with them or stated that he was not interested in moving his practice from Cleary Gottlieb.

45.    In their November 6, 2018 conversation, Justin Morimoto told Klingsberg that Defendant Freshfields was seeking to significantly expand its US mergers and acquisitions

practice. Justin Morimoto noted that he was meeting with Mitchell Presser, Defendant

Freshfields's US Head of Global Transactions the next day. He asked Klingsberg whether he

would be open to a further conversation regarding Freshfields. Klingsberg responded positively

and told Justin Morimoto that he had attended law school with Presser, whom he liked and

respected. Klingsberg suggested to Justin Morimoto that they keep in touch.

46.     Based on this conversation and Defendant Freshfields's determined motivation to

address the weaknesses in its US Private equity and M&A practices, Plaintiff ESA considered

Klingsberg to be an exceptional candidate for Defendant Freshfields's consideration.

**E.      Defendant Freshfields "Hijacks" Plaintiff ESA's Efforts**

47.     The following morning, November 7, 2018, Justin Morimoto and Phil Morimoto

met with Mitchell Presser at a restaurant in Cambridge, Massachusetts, to report on the progress

of Plaintiff ESA's search for one or more prospective lateral partners for Freshfields.

48.     During the meeting, Justin Morimoto told Presser that he had spoken with Ethan

Klingsberg the previous evening and that Plaintiff ESA had begun the process of recruiting him

as a prospective lateral partner for Defendant Freshfields's consideration.

49.     Justin Morimoto disclosed that his conversation with Klingsberg was positive and

indicated that Klingsberg likely would be willing to meet with Presser and others from

Defendant Freshfields to discuss the possibility of moving his practice. Justin Morimoto also told

Presser that Klingsberg had reacted positively when Justin Morimoto told Klingsberg that he was

meeting with Presser the next day.

50.     At the meeting, Presser expressed great interest in recruiting Klingsberg. Presser

told Plaintiff ESA that he considered Attorney Klingsberg to be an outstanding lateral partner

candidate. Presser also related that he believed that Defendant Freshfields would likely be

willing to offer Klingsberg a more attractive compensation package than he was probably being paid by Cleary Gottlieb.

51.     At the conclusion of the meeting with Presser, Plaintiff ESA was encouraged by the positive indications from both Klingsberg and Presser and began to strategize the next steps.

52.     Later that afternoon, Presser sent an e-mail to Justin Morimoto's ESA e-mail account. In the e-mail, Presser told Plaintiff ESA to "hold off" further efforts regarding Ethan Klingsberg, indicating that Defendant Freshfields was not interested in his candidacy.

53.     Despite instructing Plaintiff ESA to "hold off" on its recruitment efforts regarding Klingsberg, in now appears that Defendant Freshfields was very interested in Ethan Klingsberg's candidacy and continued those efforts to recruit him on its own or through another recruitment firm.

**F.      Defendant Freshfields's Written Fee Agreement**

54.     On November 26, 2018, Lesley Stumphauzer, Defendant Freshfields's Legal Recruiting and Personnel Manager, sent an email from her New York office to Justin Morimoto in Massachusetts. Stamphauzer attached to her email a copy of Freshfields's form Partner Contingency Fee Agreement.

55.     Like both Plaintiff ESA's fee agreement and the industry standard, Defendant Freshfields's form fee agreement provided that if Freshfields hired a candidate introduced to it by a recruitment firm, Freshfields would pay a fee equal to twenty-five percent (25%) of the partner's projected first year's guaranteed compensation (excluding bonuses). However, Freshfields's form fee agreement also provided that the fee would be capped at $600,000 for one partner. The form agreement expressly did not apply to the placement of a group of attorneys at the firm.

56.     Justin Morimoto sent a reply email to Lesley Stumphauzer on November 27, 2018. Morimoto provided Stumphauzer with a copy of Plaintiff ESA's fee agreement and a copy of Phil Morimoto's September 19, 2018 to Mitchell Presser. Justin Morimoto requested that Stumphauzer contact Phil Morimoto and ESA's COO, Nick Howard, to discuss the terms of the agreement.

57.     Lesley Stumphauzer replied on November 29, 2018 that she would take ESA's fee agreement to Defendant Freshfields's Chief Operating Officer.

58.     Plaintiff ESA has no present knowledge whether or not Defendant Freshfields executed the standard fee agreement that Justin Morimoto sent to Lesley Stumphauzer on November 27, 2018.

59.     After sending Defendant Freshfields its fee agreement on November 27, 2018, Plaintiff ESA continued to identify and recruit prospective lateral partners for Freshfields's consideration and Freshfields continued to accept those services.

**G.     Defendant Freshfields Refuses To Pay A Fee To Plaintiff ESA**

60.     On October 25, 2019, Defendant Freshfields announced that it had hired as partners in its New York office Ethan Klingsberg and three other outstanding lawyers from Cleary Gottlieb, corporate lawyers Pamela Marcogliese and Paul Tiger, and litigator Meredith Kotler.

61.     The acquisition of this exceptional team of talented lawyers and their lucrative legal practice is extremely advantageous for the Defendant Freshfields whose reputation will be significantly enhanced. Plaintiff ESA believes that the firm will receive millions of dollars in profits from the work that Klingsberg and other members of his team undertake for the clients who follow them from Cleary Gottlieb. One media report has described it as "a potentially

16

practice-shaping move for Freshfields."

62.     After learning that Freshfields had hired Klingsberg and the other Cleary Gottlieb attorneys, Plaintiff ESA contacted Defendant Freshfields.

63.     On November 1, 2019, Phil Morimoto spoke by telephone with Presser and Timothy Harkness, one of Defendant Freshfields's litigation partners.

64.     In that conversation, Presser asserted that he had no recollection of discussing Klingsberg with Plaintiff ESA on November 7, 2018. Defendant Freshfields contended that Plaintiff ESA had no role in the introduction or placement of Attorney Klingsberg and is not owed any compensation.

65.     Presser asserted that he had possession of an e-mail which demonstrated that another unnamed recruiter had notified Defendant Freshfields of Attorney Klingsberg's availability as a potential candidate prior to November 7, 2018. Presser refused Morimoto's request for a copy of the e-mail, and also refused to provide a redacted copy of the email.

66.     Despite having received the very substantial benefits of the services provided by Plaintiff ESA, Defendant Freshfields has refused to pay for the fair and reasonable value of those services.

## FIRST CLAIM FOR RELIEF
## (VIOLATIONS OF G.L. c. 93A)

67.     Plaintiff ESA restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

68.     Defendant Freshfields is engaged in trade or commerce within the meaning of G.L. c. 93A.

17

69.     At Defendant Freshfields's request, Plaintiff ESA was engaged to identify candidates for consideration by Defendant Freshfields as potential lateral partner hires. Pursuant to that request, Plaintiff ESA contacted a significant number of potential candidates including, among others, Ethan Klingsberg.

70.     On November 7, 2018, Plaintiff ESA disclosed to Defendant Freshfields that it spoken with Ethan Klingsberg and that he had indicated a willingness to have further discussions with Defendant Freshfields.

71.     Prior to November 7, 2018, Defendant Freshfields had not received any notification from any person of Attorney Klingsberg's availability as a potential candidate.

72.     After Plaintiff ESA disclosed Klingsberg's receptivity to consider moving his very successful legal practice, Defendant Freshfields instructed Plaintiff ESA to discontinue any further efforts to recruit Klingsberg. Notwithstanding its instruction to Plaintiff ESA, Defendant Freshfields continued to recruit Klingsberg on its own or through another recruitment firm.

73.     Defendant Freshfields instructed Plaintiff ESA to discontinue any further efforts to recruit Klingsberg, not because of a lack of interest in Klingsberg, but solely to unfairly deprive Plaintiff ESA of its fee.

74.     By the acts and conduct described above, Defendant Freshfields has engaged in unfair or deceptive acts or practices prohibited by G.L. c. 93A, §§ 2 and 11. The actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the Commonwealth.

75.     Defendant Freshfields's acts and conduct in violation of G.L. c. 93A have been intentional and willful.

76.     By reason of the foregoing, Plaintiff ESA has suffered damages, including but not limited to attorney's fees and costs, caused by Defendant Freshfields.

## SECOND CLAIM FOR RELIEF
## (QUANTUM MERUIT)

77.     Plaintiff ESA restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

78.     Plaintiff ESA performed work, labor and services that it provided to Defendant Freshfields at the Defendant's request and in good faith.

79.     Plaintiff ESA had a reasonable expectation of being paid the fair value of its services.

80.     Defendant Freshfields accepted the services provided by Plaintiff ESA and reasonably believed, or should have believed, that Plaintiff ESA had an expectation to be paid the fair value for those services.

81.     The reasonable and fair value of the services performed by Plaintiff ESA and provided to Defendant Freshfields is twenty-five percent (25%) of Attorney Klingsberg's first-year compensation, which is reported to be $10 million, and twenty-five percent (25%) of the first-year compensation for each member of his team that was also hired from Cleary Gottlieb.

82.     Despite having received the very substantial benefits of the services provided by the Plaintiff, Defendant Freshfields has refused to pay for the fair and reasonable value of those services.

83.     By reason of the forgoing, Plaintiff ESA has been damaged in an amount to be determined at trial, and for which it is entitled to be compensated under Massachusetts law or, alternatively, under New York law.

**THIRD CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**

84.     Plaintiff ESA restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

85.     By introducing Attorney Klingsberg to Defendant Freshfields, Plaintiff ESA conferred a measurable benefit upon the Defendant, which will be able to utilize Attorney Klingsberg's services and client base, as well as the services and client base of the other members of his team that was also hired from Cleary Gottlieb, to increase substantially its profits and to expand its business.

86.     Plaintiff ESA and Defendant Freshfields both intended that Plaintiff ESA be compensated for the benefits conferred.

87.     Defendant Freshfields has failed and refused to compensate Plaintiff ESA for any of the benefits conferred upon it.

88.     Defendant Freshfields has retained such benefits in circumstances in which, in equity and good conscience, should be paid Plaintiff ESA, and thus has been unjustly enriched.

89.     Plaintiff ESA has been damaged by Defendant Freshfields's unjust enrichment.

90.     By reason of the forgoing, Plaintiff ESA has been damaged in an amount to be determined at trial, and for which it is entitled to be compensated under Massachusetts law or, alternatively, under New York law.

**FOURTH CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

91.     Plaintiff ESA restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

92.     Plaintiff ESA and Defendant Freshfields are parties to a written agreement embodied in the Plaintiff ESA's fee agreement or, alternatively, in Defendant Freshfields's fee agreement, the various e-mails between the parties, or a combination thereof. In the alternative, Plaintiff ESA and Defendant Freshfields are parties to a parol agreement.

93.     Plaintiff ESA has performed under the terms of the parties' agreement, Defendant Freshfields has breached its obligations under the agreement, and Plaintiff ESA has sustained damages as a direct result of the Defendant's breach.

94.     Defendant Freshfields promised and agreed that if Plaintiff ESA introduced it to a potential lateral partner candidate whom Defendant subsequently hired, Defendant would pay a fee to Plaintiff ESA for its services.

95.     In reliance on Defendant Freshfields's promises and agreements, Plaintiff ESA introduced Attorney Klingsberg to Defendant Freshfields as a potential lateral partner candidate

96.     Plaintiff ESA's reliance on Defendant Freshfields's promises and agreements was reasonable.

97.     Plaintiff ESA and Defendant Freshfields entered into a contract whereby Defendant agreed to pay Plaintiff a fee for its services in introducing lateral partner candidates who were hired by Defendant.

98.     In breach of the aforesaid contract, Defendant Freshfields has failed and refused to pay Plaintiff ESA its fee for procuring Attorney Klingsberg as a lateral partner hired by Defendant Freshfields.

99.     Plaintiff ESA has suffered substantial damage as a result of Defendant Freshfields's breach of contract and its failure to pay a fee to the Plaintiff.

21

100.    By reason of the forgoing, Plaintiff ESA has been damaged in an amount to be determined at trial, and for which it is entitled to be compensated under Massachusetts law or, alternatively, under New York law.

## FIFTH CLAIM FOR RELIEF
## BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING)

101.    Plaintiff ESA restates and realleges herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

102.    The parties' agreement contained an implied covenant of good faith and fair dealing between the parties.

103.    As described above, Defendant Freshfields has breached the implied covenant of good faith and fair dealing and has acted in bad faith by seeking to prevent Plaintiff ESA from fully performing under the parties' agreement and by otherwise frustrating Plaintiff ESA's right to receive the benefit of that agreement.

104.    As a result of Defendant Freshfields's breach of the implied covenant of good faith and fair dealing, Plaintiff ESA has suffered damages, and for which it is entitled to be compensated under Massachusetts law or, alternatively, under New York law.

## DEMAND FOR TRIAL BY JURY

Plaintiff Boston Executive Search Associates, Inc. hereby demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff Boston Executive Search Associates, Inc. respectfully requests that this Court grant it the following relief:

1.      That judgment be entered in favor of Plaintiff Boston Executive Search Associates, Inc. on its claims for relief against Defendant Freshfields Bruckhaus Deringer US LLP;

2.      That judgment be entered in favor of Plaintiff Boston Executive Search Associates, Inc. on its claims for violation of G.L. c. 93A against Defendant Freshfields Bruckhaus Deringer US LLP for treble damages, interest, costs and attorneys' fees to which it is entitled;

3.      For the costs and disbursements of this action, together with reasonable attorneys' fees; and

4.      For such other and further relief as is just and proper.

BOSTON EXECUTIVE SEARCH ASSOCIATES, INC.

By its Attorneys.

/s/ Douglas W. Salvesen

_____
Douglas W. Salvesen (BBO# 550322)
YURKO, SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, Massachusetts 02113
(617) 723-6900

Dated:   February 24, 2020

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on February 24, 2020.

/s/ Douglas W. Salvesen

_____

Douglas W. Salvesen

Dated:   February 24, 2020