UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-12378-RGS

BOSTON EXECUTIVE SEARCH ASSOCIATES, INC.

v.

FRESHFIELDS BRUCKHAUS DERINGER US LLP

MEMORANDUM AND ORDER ON
DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

June 3, 2020

STEARNS, D.J.

Boston Executive Search Associates, Inc. (ESA), a Massachusetts-based "headhunting" agency brought this diversity jurisdiction lawsuit in the Massachusetts district court on November 19, 2019, against a New York law firm, Freshfields Bruckhaus Deringer US LLP (Freshfields).  The Second Amended Complaint (SAC) alleges a violation of the Massachusetts Unfair Business Practices Act (Chapter 93A), as well four contract and quasi-contract claims:  breach of contract (Count IV); breach of the implied covenant of good faith and fair dealing (Count V); quantum meruit (Count II); and unjust enrichment (Count III).  Freshfields now moves to dismiss the Second Amended Complaint (SAC) for failure to state a claim upon which

relief can be granted citing Fed. R. Civ. P. 12(b)(6).  For the reasons to be explained, Freshfields's Motion to Dismiss will be ALLOWED in part and DENIED in part.

## BACKGROUND

The facts, viewed in the light most favorable to ESA as the nonmoving party, are drawn from the SAC and the documents it incorporates by reference. ESA is based in Cambridge, Massachusetts.  ESA's specializes in the recruitment of senior-level partners interested in making a lateral transfer to a competing firm.  Freshfields is an international law firm with a strong presence in New York City.

According to the SAC, Mitchell Presser, Freshfields's United States Head of Global Transactions, contacted ESA in August of 2018 to discuss potential help in recruiting for one of its practice groups.  SAC ¶ 2.  A series of emails were then exchanged between Massachusetts and New York regarding a possible contract.  On August 23, 2018, Phil Morimoto, the President of ESA, wrote to Presser complaining "that Plaintiff ESA did not yet have a completed fee agreement with Defendant Freshfields."  SAC ¶ 33.  According to the SAC, Presser replied that "if Defendant Freshfields had a standard agreement [Presser] would send it to [Phil] Morimoto, otherwise,

Freshfields would agree to Plaintiff ESA's agreement." SAC ¶ 34.[1] On September 19, 2018, having heard nothing further from Presser, ESA forwarded a copy of its standard form "Agreement for Recruiting Services." *Id.* ¶ 36.  Freshfields did not sign it.  Rather, on November 26, 2018, Lesley Stumphauzer, the Legal Recruiting and Personnel Manager at Freshfields, emailed ESA's Justin Morimoto a copy of Freshfields's Partner Contingency Fee Agreement.  The proposed agreement differed materially from the one proffered by ESA, specifically by imposing a cap on any fee that would be paid to ESA and by prohibiting the recruitment of a practice group.

On November 27, 2018, Justin Morimoto responded to Stumphauzer's email with another copy of ESA's standard form proposal and "requested that Stumphauzer contact Phil Morimoto and ESA's COO, Nick Howard, to discuss the terms of the agreement." *Id.* ¶ 56.  Stumphauzer replied that she would refer ESA's proposal to Freshfields's Chief Operating Officer.  Again, Freshfields did not sign the agreement.

Earlier, on November 6, 2018, Justin Morimoto had called Ethan Klingsberg, a partner at the New York law firm Cleary Gottlieb Steen & Hamilton, to inquire whether Klingsberg would have any interest in joining

---

[1] More precisely, Presser's email read: "If we have a standard one, we will send it.  If not, we will work with yours."  Dkt # 32, Ex. A.

Freshfields.   According to the SAC, "Klingsberg responded positively," stating that "he would be open to a further conversation regarding Freshfields." *Id.* ¶ 45.  The next day, Justin Morimoto, Phil Morimoto, and Presser met at a restaurant in Cambridge, Massachusetts.  Justin Morimoto described his talk with Klingsberg.  In response, "Presser expressed great interest in recruiting Klingsberg," and said that "he considered Attorney Klingsberg to be an outstanding lateral partner candidate."  *Id.* ¶ 50.  Later that day, Presser emailed Justin Morimoto instructing ESA to "hold off" on any effort to recruit Klingsberg.  *Id.* ¶¶ 6, 52.

Almost a year thereafter, on October 25, 2019, Freshfields announced that it had hired Klingsberg and three associates from Cleary Gottlieb.  *Id.* ¶ 60.  On November 1, 2019, Phil Morimoto spoke with Presser and Timothy Harkness, another partner at Freshfields.  "Presser asserted that he had no recollection of discussing Klingsberg with Plaintiff ESA on November 7, 2018," and "contended that Plaintiff ESA had no role in the introduction or placement of Klingsberg and [was] not owed any compensation."  *Id.* ¶ 64.

## DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 556.  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008), quoting *Twombly*, 550 U.S. at 545.

### Business Brokerage Statute of Frauds

If Massachusetts law applies, it is readily apparent from the undisputed facts that ESA's contractual claims (Counts IV and V), are doomed by the 1984 Massachusetts Business Brokerage Statute of Frauds, Mass. Gen. Laws ch. 259, § 7.  In plain terms, the Brokerage Statute provides that "[a]ny agreement to pay compensation for service as a broker or finder . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith . . . ." *See Cantell v. Hill Holliday Connors Cosmopulos, Inc.*, 55 Mass. App. Ct. 550, 552 (2002) (in the absence of a writing, a headhunting agency's claims for breach of contract and

quantum meruit were barred by the Statute of Frauds); *see also* *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) ("[T]he implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached."). Moreover, the Brokerage Statute specifically precludes quasicontractual claims (Counts II and III): "The provisions of this section shall apply to a contract implied in fact or in law to pay reasonable compensation." *See State Tax Auditing & Research, Inc. v. Waters Corp.*, No. 98-2594-B, 2000 WL 782948, at *3 (Mass. Super. Ct. Apr. 5, 2000) ("[T]he plain language of [Mass. Gen. Laws ch. 259, § 7] makes clear that not only must 'any agreement to pay compensation for services as a finder,' be in writing, but 'contract[s] implied in fact or in law to pay reasonable compensation,' i.e. . . . . claims based on unjust enrichment or quantum meruit, are barred.").[2]

---

[2] ESA makes a desultory argument that the court should apply the law of New York and not that of Massachusetts to its contract and quasicontractual claims. The reason is obvious: New York does not apply its Statute of Frauds to employment recruitment agencies. See *Mark Bruce Int'l, Inc. v. Blank Rome LLP*, 19 Misc. 3d 1140(A), at *5 (Sup. Ct., N.Y. County 2008). A federal court sitting in a diversity case will apply the choice-of-law framework of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491 (1941). Massachusetts has replaced its traditional rule focusing on the locus of the alleged wrong with the "functional" approach of Restatement (Second) of Conflict of Laws §§ 6, 187, 188 (1971). *See Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631 (1985). Under this

### *Chapter 93A Claim*

Count I of ESA's SAC alleges a violation of Mass. Gen. Laws ch. 93A. This statute broadly prohibits unfair or deceptive business practices. "To allege a violation of [Chapter 93A], a plaintiff must show that the defendant engaged in trade or business and committed an unfair or deceptive practice, causing economic injury to the plaintiff." *Hanrahran v. Specialized Loan Servicing, LLC*, 54 F. Supp. 3d 149, 153 (D. Mass. 2014).

Freshfields argues that Count I is derivative of ESA's contract claims and, thus, falls with them.  Dkt # 31 at 12.  However, ESA's support for this claim has a cumulative factual premise  that is arguably distinguishable from its failure to exact a written agreement from Freshfields including the perhaps overly trusting disclosure of Klingsberg's availability to Presser at the November 7, 2018 meeting in Cambridge, and after an initial showing of enthusiasm, Presser's sudden order to ESA to "hold off," followed by radio silence, and eventually, Klingsberg's hiring by Freshfields.   SAC ¶¶ 69-73.

---

approach, a court looks to the law of the state that has the most significant relationship to the transaction, which in this case is undoubtedly Massachusetts.   ESA, the alleged injured party, is a Massachusetts corporation.  It chose to bring its lawsuit in a Massachusetts forum, which is where the injury is alleged to have been suffered.  The efforts to form a contract were initiated from Massachusetts using a Massachusetts-generated form agreement.  The initial overture to Attorney Klingsberg was made from Massachusetts.  Perhaps most important, the disclosure of Klingsberg's potential interest in joining Freshfields occurred here as well.

Whether these facts are connected in some sense or simply coincidental is impossible to say without a development of the record.  The same is true with respect to Freshfields' argument that ESA is unable to show that the alleged unfair and deceptive acts occurred primarily and substantially within Massachusetts,[3] or whether the acts themselves are sufficiently rancid to rise above the ordinary rough and tumble of the marketplace.[4]

## CONCLUSION

For the foregoing reasons, Freshfields's motion to dismiss is ALLOWED as to Counts II through V and DENIED as to Count I.


SO ORDERED.

/s/ Richard G. Stearns _
UNITED STATES DISTRICT JUDGE

---

[3] As a rule, a plaintiff is not required to plead facts sufficient to withstand a claim by the defendant that the center of gravity of a Chapter 93A claim does not lie within the Commonwealth; thus, the issue is nearly impossible to determine as a matter of law on a motion to dismiss. *See Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*, 87 Mass. App. Ct. 296, 301 (2015).

[4] "Whether conduct is unfair or deceptive under [Mass. Gen. Laws ch. 93A] is a mixed question of law and fact."  *Zabin v. Picciotto*, 73 Mass. App. Ct. 141, 170 (2008).